# IN THE UNITED STATES COURT DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

URBAN SUSTAINABILITY DIRECTORS
NETWORK, OAKVILLE BLUEGRASS
COOPERATIVE, AGROECOLOGY
COMMONS, PROVIDENCE FARM
COLLECTIVE CORP. and INSTITUTE FOR
AGRICULTURE AND TRADE POLICY,

     *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, BROOKE ROLLINS, in
her official capacity as Secretary of the
United States Department of Agriculture,
DEPARTMENT OF GOVERNMENT
EFFICIENCY, AMY GLEASON, in her
official capacity as Acting Administrator of
the Department of Government Efficiency,
UNITED STATES FOREST SERVICE,
TOM SCHULTZ, in his official capacity as
Forest Service Chief, NATURAL
RESOURCES CONSERVATION SERVICE,
AUBREY J.D. BETTENCOURT, in her
official capacity as Chief of the Natural
Resources Conservation Service, NATIONAL
INSTITUTE OF FOOD AND
AGRICULTURE, JAYE L. HAMBY, in his
official capacity as Director of National
Institute of Food and Agriculture, FARM
SERVICE AGENCY, WILLIAM BEAM, in
his official capacity as Administrator of the
Farm Service Agency, AGRICULTURAL
MARKETING SERVICE, and ERIN
MORRIS, in her official capacity as
Administrator of Agricultural Marketing
Service,

     *Defendants*.

Case No. 1:25-cv-01775-BAH

## DECLARATION OF JAMAL BROWN

I, Jamal Brown, declare as follows:

1.   My name is Jamal Brown, and I live in Houston, Texas. This declaration is based on my personal knowledge and professional education and experience. I am over the age of eighteen and suffer from no legal incapacity. I submit this declaration in support of the Urban Sustainability Directors Network ("USDN"), which is one of several grant recipients affected by the termination of U.S. Department of Agriculture ("USDA") grant funding. If called to testify, I could and would state the facts herein.

2.   USDN is a 501(c)(3) nonprofit organization that was founded in 2008. USDN is incorporated in Woodbridge, Illinois and headquartered in Sanford, North Carolina.

3.   I am the Chief Finance and Operations Officer for USDN. Before assuming this role in 2024, I was the Director of Finance, People, and Culture for two years. Prior to joining USDN, I held roles leading finance, operations, and administration in the fields of education, banking, and community development.

4.   I am deeply familiar with USDN's mission, policies, and programs. As Chief Finance and Operations Officer, I oversee the organization's budget and finances, create financial reports, and co-sign all vendor contracts alongside the Chief Executive Officer. My role includes the direct management of financial reporting for federal grants.

5.   USDN's mission supports local government sustainability directors in the United States and Canada to accelerate adoption of sustainability practices, with over 330 member municipalities across the region. Federal grant funding helps USDN achieve our mission by providing us and our members with financial resources to strengthen the field of urban forestry, increase equitable access to urban tree canopy in disadvantaged communities, broaden

community engagement in urban forestry planning, and expand best management and maintenance practices to improve resilience to climate change and extreme heat.

6.   On April 2, 2025, USDN received a letter terminating its Urban and Community Forestry Assistance program ("Urban Forestry Program") grant from USDA and the U.S. Forest Service ("USFS"). A true and correct copy of the termination letter is attached hereto as Exhibit A. This letter is the full extent of the reasoning for the termination provided by USDA and USFS.

7.   In 2023, USDN applied for this Urban Forestry Program grant for our project, "Accelerating Urban Forestry as Equity Centered Climate Action and Sustainable Community Development."

8.   We spent several months rigorously preparing our application for the grant. Five other staff members, including the Interim Executive Director, and I developed detailed project and budget narratives that included two categories of sub-awards, technical assistance services, and administrative costs for USDN.

9.   The purpose of our grant project is to support urban forestry in communities through pass-through funding and technical assistance. The first stage of the project involves pass-through grants that fund tree planting and sustainability director positions in 25 cities that were selected by USFS during the grant application process. The second stage involves pass-through funding to additional recipients to develop workforce-development programs that train youth on how to plant and maintain trees in their neighborhoods. USDN's project also provides technical assistance to the pass-through recipients through training and assessment. The grant further contributes $1 million per year to USDN's administrative costs, and accounts for 60% of our annual budget. A true and correct copy of USDN's project narrative for this grant is attached hereto as Exhibit B.

10. Once awarded the grant, we purchased DocuSign and planned to upgrade our accounting system. Additionally, we hired three full-time staff members to support project implementation and grant compliance, and had planned to hire two more before the grant was terminated.

11. On September 17, 2023, USDN was approved for an Urban Forestry Program grant for $28 million for our project. The Award of Cooperative Agreement was executed on December 11, 2023, and funding was authorized through November 30, 2028. A true and correct copy of the agreement is attached hereto as Exhibit C.

12. Since then, USDN has spent $6,061,997.32 of the award.  USDN has entered into sub-award agreements with the 25 first stage sub-awardees identified by USFS and has issued at least one payment to 24 of these 25. All 25 have money remaining on their agreed upon sub-awards.

13. In November 2024, USDN awarded 14 stage two awards. We entered into agreements with 12 before the grant was terminated. No payments have been issued to those recipients.

14. Beginning in late January 2025, following the start of the present Presidential Administration, our award was frozen.

15. Then, on April 2, 2025, we received the letter that is Exhibit A, via email, from USDA and USFS terminating our federal award. Beyond the termination letter, we have received no further communication from USDA and USFS about the termination of our award.

16. The termination of our award has had and will continue to have devastating and irreparable impacts on USDN's ability to carry out its projects, achieve its mission, and maintain its operations. We have been forced to stop our project altogether, including stopping payment to all sub-awardees. We have also had to cancel contracts with contractors who were meant to provide technical assistance to our sub-awardees. USDN had to significantly scale up their operations and expertise to take on this project, and now is anticipating a 25-30% reduction in

our operations if our grant is not restored immediately, and a 66% reduction if it is not restored long-term.

17. Consequently, some of our sub-awardees have had to stop their urban forestry programs and lay off staff hired to support these programs. Faced with uncertainty about the future of their organizations and programs, many sub-awardees are unsure how to utilize their remaining funds.

18. We have been forced to redirect our resources and staff time away from our mission and other critical projects to address the termination and comply with award close out procedures. Our number one priority has become fighting for USDN's survival. Due to the freeze and subsequent termination of our federal award, we have had to withdraw funds from other sources and are actively looking for alternative funding options to sustain our organization. But we have not yet been able to identify any funding source that would account for this large of a loss.

19. While we have not had to lay off staff yet, USDN will likely have to reduce staff if our funding is not restored immediately. This grant covered the salaries of approximately 60% of seven staff and 100% of four staff, including two sub-awardee portfolio managers and two financial managers. Every staff member involved in supporting this grant is experiencing stress and uncertainty due to the possibility of layoffs.

20. USDN's reputation as a reliable source of funding and services to municipalities and community-based organizations has also been harmed by USFS's termination of this grant. Our organization invests significant time and resources toward developing transparent and trust-based relationships with our membership and sub-awardees. However, due to the loss of this federal award, we can no longer fulfill our responsibilities to our sub-awardees.

21. On May 1, 2025, USDN submitted an appeal letter to USFS pursuant to the optional process outlined in the DISPUTES provision of our award agreement. However, to date, USDN has not heard back from the agency.

22. The injury to USDN and its interests would be redressed by an order from the Court granting Plaintiffs' their requested relief. USDN would be immediately able to start our project and restore funding to our sub-awardees and contractors.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28

U.S.C. § 1746, that the foregoing is true and correct.

Executed this 25 day of June in Houston, Texas.

Jamal Brown

Chief Finance and Operations Officer

Urban Sustainability Directors Network

7

# Exhibit A



| United States Department of Agriculture | Forest Service | Washington Office | 1400 Independence Avenue, SW Washington, D.C. 20250 |

---

**File Code:** 1580
**Date:** **April 2, 2025**

Jamal Brown
Director of Finance, People, & Culture
Center for Regenerative Solutions/Urban Sustainability Network
500 Westover Drive, #14973
Sanford, NC 27330

Re: Termination Notice for Agreement No. **24-CA-11132544-016 for the project titled, Accelerating Urban Forestry as Equity Centered Climate Action and Sustainable Community Development**

Dear Mr. Brown:

This letter provides notice that the United States Department of Agriculture is terminating your federal award, (**24-CA-11132544-016, Accelerating Urban Forestry as Equity Centered Climate Action and Sustainable Community Development**), in accordance with the terms and conditions of your award, which include applicable regulations relating to termination. *See* 2 C.F.R. §§ 200.340-343 and 472.

It is the policy of the Department to establish a return to American principles and realign its focus towards its original objectives of maximizing and promoting American agriculture; ensuring a safe, nutritious, and secure food supply; enhancing rural prosperity; and managing our National Forests. This policy prioritizes multiple use management; conservation of our Nation's natural resources; and a focus on serving the American people in furtherance of those policies. The Department's resources must be conserved and focused upon its original objectives, as well as its obligations under the Constitution and laws of the United States. The Department's priorities include ensuring that its grants, cooperative agreements, and other similar arrangements do not support programs that promote or take part in climate change or environmental justice initiatives. It is vital that the Department assess both whether all award payments are free from fraud, abuse, and duplication and whether they are in the best interests of the United States.

Termination The award specified above provides funding for programs that promote or take part in climate change or environmental justice initiatives; that conflict with the Department's policies and priorities; that are not free from fraud, abuse, or duplication; or that otherwise fail to serve the best interests of the United States. The award is therefore inconsistent with, and no longer effectuates, Department priorities. *See* 2 C.F.R. § 200.340(a)(4). Pursuant to, among other authorities, 2 C.F.R. §§ 200.339-343, which are applicable to your award, the Department hereby terminates award No. **24-CA-11132544-016** in its entirety effective April 2, 2025.

Closure You must submit all final reports and a final payment request no later than 120 calendar days after the date of this notice. You will be reimbursed for costs incurred up to the date of this notice that are determined to be consistent with 2 C.F.R. § 200.343, *Effects of suspension or*



Caring for the Land and Serving People

Printed on Recycled Paper



Center for Regenerative Solutions/Urban Sustainability Network

2

*termination*. Any open balance remaining 120 days after the date of this notice will be unavailable for payment.

If you do not submit all reports in accordance with the terms and conditions of the Federal award within one (1) year of the effective termination date, the Forest Service must proceed to close out the award with the information available. In these circumstances, in accordance with 2 C.F.R. § 200.344, the Forest Service must report your material failure to comply with the terms and conditions of the award in SAM.gov using the Contractor Performance Assessment Reporting System (CPARS). In this way, failure to submit timely and accurate final reports may affect your future funding.

Recipients are required by Federal regulation to retain all Federal award records consistent with 2 C.F.R. § 200.334.  Termination of the agreement does not affect a Federal agency's or a pass-through entity's right to disallow costs and recover funds based on a later audit or other review. In addition, termination does not affect a recipient's obligation to return any funds due as a result of later refunds, corrections, or other transactions, including final indirect cost rate adjustments (refer to 2 C.F.R. § 200.345).

Appeal Process. See the DISPUTES provision in the award document.

If you have questions, contact your Forest Service Program Contact, Nausheen Iqbal at Nausheen.iqbal@usda.gov.

Sincerely,

LISA NORTHROP  Digitally signed by LISA NORTHROP
Date: 2025.04.02 17:04:27 -04'00'

LISA NORTHROP
Associate Deputy Chief
State, Private, and Tribal Forestry

Cc:
Jaelith Hall-Rivera, Chief of Staff, Office of the Chief
John Crockett, Deputy Chief of State, Private, and Tribal Forestry
Lisa Northrop, Associate Deputy Chief of State, Private, and Tribal Forestry
Andria Weeks, Associate Deputy Chief of Business Operations
Nausheen Iqbal, Assistant Director (Acting) Urban and Community Forestry
Lynne Sholty, Supervisory Grants & Agreements Specialist

# Exhibit B

**CRS/USDN USFS REVISED PROJECT NARRATIVE**
**Center for Regenerative Solutions: Accelerating Urban Forestry as Equity-Centered Climate
Action and Sustainable Community Development**

**Project Title**:  Accelerating Urban Forestry as Equity-Centered Climate Action and Sustainable
Community Development

**Project Applicant**:  Center for Regenerative Solutions/Urban Sustainability Directors Network

**Project Summary**:
Center for Regenerative Solutions and its sponsor Urban Sustainability Directors Network
propose a five-year program to strengthen the field of urban forestry, increase equitable access
to urban tree canopy in disadvantaged communities, broaden community engagement in urban
forest planning, and expand best management and maintenance practices to improve resilience
to climate change and extreme heat. Through pass-through tree-planting funds and
programmatic technical assistance, *Accelerating Urban Forestry as Equity-Centered Climate
Action and Sustainable Community Development* will support communities by re-granting
funding for urban forestry projects and providing capacity-building programs through an Urban
Forestry as Community Development Accelerator.

**1.     Project Scope Alignment:**
Building on more than three years of work within the 276 city/county member USDN network
led by Center for Regenerative Solutions and leading local jurisdictions, *Accelerating Urban
Forestry as Equity-Centered Climate Action and Sustainable Community Development* will
support communities with pass-through funding and technical assistance via a proven
capacity-building initiative, the Urban Forestry as Community Development Accelerator.

Nature-based solutions play a critical role in the economy, national security, human health,
equity, and the fight against climate change. In support of alignment with national goals to
increase community resilience to extreme weather and other climate impacts, CRS has
pioneered the approach to organizing nature-based solutions as climate action that achieve
equity-centered community development focusing on the communities most impacted by
historical injustices and climate risks. Integrating across multiple climate action areas, CRS helps
communities direct their project benefits in disadvantaged neighborhoods in municipalities
across the country with the latest approaches to urban forestry-as-cooling strategies. This work
focuses on addressing the disproportionate heat, flooding and health impacts on
nature-deprived communities while bolstering workforce development and economic benefits.
It is also grounded in the experience that successful federal policy implementation depends on
local communities helping to shape and integrate solutions that are immediately
implementable, create visible and measurable benefits, and facilitate long-term local ownership
and investment.

In a cooperative agreement with the US Forest Service, CRS and USDN will aim to accomplish
the following Justice40 and US Forest Service 10-Year Action Plan goals:

- Technical assistance, guidance, community engagement support, and training on the development and implementation of urban forestry-based resilience programs and climate action plans for disadvantaged neighborhoods.
- Workforce development, training programs, and guidance on the placement of diverse individuals within cities that desperately need urban planners and foresters to develop and implement efforts using urban forestry to mitigate heat and achieve other vital community health benefits.
- Best practices, social impact assessments, climate finance initiatives, implementation plans, and updated metrics that enable increased urban heat island mitigation through urban forestry, as well as increased acres of restored green space and tree cover in communities that are historically and currently underserved and nature deprived.

*Accelerating Urban Forestry as Equity-Centered Climate Action and Sustainable Community Development* will directly help disadvantaged communities through:
- Integrating urban and community forestry into every aspect of urban planning by deploying and training on new, best-in-class tools to manage and measure tree canopy benefits;
- Promoting urban forestry's improvement of human health and wellness through community engagement and communications campaigns to raise visibility of science, data and experiential knowledge connecting benefits of urban forestry and tree canopy to community health;
- Supporting workforce development in cities that focus on sustainable career paths for diverse urban forestry personnel to work in and directly support tree planting projects in underserved communities and low-canopy neighborhoods;
- Improving urban forest management, maintenance and arboricultural practices by enhancing citizen urban forestry stewardship, training practitioners on best use of technology and tools, securing funding to plant a sufficient quantity of high-quality trees, and customizing technology tools and action plans for different regions and conditions;
- Leveraging the full range of funding options for urban forestry, including public-private partnerships, creating innovative and sustainable funding pathways to continue expanding urban forestry, and policies that protect community tree programs long term;
- Building and cultivating urban forestry public education programs for residents of all ages, including locally accessible narratives and culturally relevant examples showing urban forests' direct personal benefits, leading to community health, safety and shared prosperity.

**Program Elements**
The overall award of $28M to CRS/USDN will be utilized per the following structure:

<u>Portfolio Pass-Through Funding & Project Oversight</u>
For its USFS-assigned Portfolio, CRS/USDN will facilitate sub-award agreements and provide $16,851,732 in IRA funding to at least 25 cities. Funding, financial management, and project oversight will ensure funded projects achieve agreed-upon goals and impact. Through ongoing

case management, Portfolio cities will be offered the technical assistance they need based on their project goals, ensuring their programs use USFS-approved tools to center equity, and their community economic and workforce development efforts benefit disadvantaged communities directly.

Stage 2 Sub-Awardees & Case Management
To allocate the remaining potential pass-through funding of $5,548,268, CRS/USDN will work with USFS to add additional sub-awardees either through existing proposals or through a process that uses the Climate & Economic Justice Screening Tool (CEJST) and other approved metrics to determine eligibility for additional sub awardees. CRS/USDN will solicit proposals from communities where forestry projects will benefit distressed neighborhoods with low income, high persistent poverty, high unemployment, racial and ethnic residential segregation, and disproportionate impacts from climate change and environmental stressors.

Technical Assistance & Capacity Building
Guidance and support will be provided through CRS' Urban Forestry as Community Development Accelerator. A modular and customizable urban heat/urban forestry training program will provide topic-focused instruction and technical assistance to all cities designated as CRS/USDN sub-awardees. Instruction on urban heat assessment and management, and implementation of best-in-class equity-centered urban forestry planning and implementation will be made available to cities through training modules and instruction from national leaders in their respective fields of urban heat management, urban forestry, equity-centered community engagement, equity-centered workforce development, urban forestry policy, and climate action impact assessment.

The Accelerator is a national scale, proven mechanism to increase cities' capacity to combat urban heat with tree canopy and improve the health, economy and workforce in disadvantaged communities. Modifying this existing program for sub-awardees will provide technical assistance to maximize the impact of IRA funding in multiple ways: 1) the program provides each participating community access to nationally standardized and annually updated urban forestry and urban heat management data and tools to enable more replicable capacity-building assistance and adoption; 2) holistic and robust training modules focus on both equity-based community engagement and equity-centered workforce development programs; 3) education on urban forestry policy mechanisms to support long-term urban forestry expansion and maintenance; and 4) course instruction, recordings, reading materials and participant-identified issues and responses are housed in a highly-accessible and interactive public platform.

2.      **Implementation Strategy/Methodology/Timeline:**
*Accelerating Urban Forestry as Equity-Centered Climate Action and Sustainable Community Development* will aim to serve communities with funding and technical assistance as quickly as possible and CRS/USDN estimates a majority of the support will be provided in three years, with continued oversight and financial management for the duration of the USFS grant time horizon of five years. The program elements are expected to follow this general timeline:

<u>Portfolio Pass-Through Funding</u> will be allocated in 2024-2026 and ongoing financial management and technical assistance will be provided for the duration of their projects, estimated to be between three to five years. CRS/USDN Portfolio includes the following communities:

- Alum Rock and Overfelt Gardens Urban Forest Management
- Expanding Tree Canopy, Improving Tree Care, and Growing Community Capacity in Santa Cruz, California
- Tree Make Life Better
- Glenwood Springs Tree Planting, Maintenance, and Education Program
- Greeley Tree Canopy Rescue
- Expanding an Equitable Urban Tree Canopy in Westminster, Colorado
- Expanding the Urban Tree Canopy in Wheat Ridge
- City of Orlando Urban & Community Forestry Grant
- Pocatello Urban Forest
- Growing Green for Rexburg
- Preserve, Protect, and Enhance Nampaâs Urban Forest
- ReTree LC Corridor Enhancements
- City of Santa Fe Urban and Community Forestry
- City of North Las Vegas Urban and Community Forestry
- White Plains Urban and Community Forestry Project
- Revitalization of Urban Forest within Disadvantaged Communities in the City of Canton
- Urban Forestry Master Planning Initiative
- Hiring an Urban Forester
- The City of Lyndhurst Oak Wilt Pruning Project and Planting Vacancies
- City of Stow Ohio Workforce Development
- Uplifting People and Place Through Youth and Young Adult Apprenticeships in Sustainable Forestry and Agroforestry
- Connellsville Community Tree Program
- Borough of State College Urban Forestry Sustainability Plan
- Charlottesville Urban Forest Management Planning " An Adaptive Approach"
- Stewarding, Planting, Restoring Our Urban Trees (SPROUT) in Fairfax City

<u>Stage 2 Sub-Awards</u> will be distributed through a process that will begin after the Portfolio funding agreements have been executed. Estimated to launch in 2025, the process will allow for solicitation of proposals, vetting and awarding, ongoing financial management, technical assistance and reporting guidance for the duration of their projects, not to exceed three years.

<u>Financial management</u> of grants to cities will be handled by USDN's deeply experienced team, which has supported hundreds of boots-on-the-ground projects resulting in tens of millions of dollars in strategically managed climate investments, and additional hundreds of millions of dollars leveraged from other public, foundation and private investors, with project timelines spanning six months to three years and impact tracking communicated across multiple jurisdictional databases.

<u>Project oversight, sub-awardee case management and technical assistance</u> will be handled by the CRS/USDN team of professionals who have helped dozens of US cities and their community partners rapidly grow community-led implementation of equity-centered, nature-based solutions to some of the most pressing climate change challenges facing urban centers. Through outcome evaluation processes at the outset and for the duration of the funding time horizon, CRS/USDN and its sub-awardees will help advance the field of equity-centered urban forestry as community development through the implementation of best practices and identification of opportunities for multi-jurisdictional collaboration and joint initiatives.

**Outcomes Evaluation**

CRS/USDN will evaluate the sub-awardees' urban forestry projects by defining priorities in collaboration with sub-awardees and their community stakeholders to identify desired outcomes, and then track and assess outcomes. The Urban Forestry as Community Development Accelerator technical assistance platform will feature modules and exercises that encourage collaboration with residents, community and government leaders to identify the policy and practice barriers that limit scale of impact and then identify outcomes that will help make the case for fostering change. This will include identification of qualitative measures of progress tied to core community priorities and quantitative measures related to improved climate resilience.

Additionally, quantitative and qualitative project accomplishments (metrics and activities) will be reported for periods ending June 30 and December 31 to a public-facing Impact Reporting platform. Impact reporting includes content such as census tracts, stories, videos, photographs, and testimonials.

Project oversight and case management for sub-awardees will provide access to heat modeling data, urban forestry planning tools, best practices, and materials; engagement with hundreds of additional communities through workshops, gatherings/convenings, and communications; recruitment, training, and support to place diverse professionals in career-building, leadership-developing employment experiences; and development of viable, scalable working models for social impact assessments and conservation finance pathways for long-term impact in communities across the Country.

Exact metrics will be established with each awardee's local stakeholders, but may include:
- Improved urban forest management: policy enactment related to community tree programs, increased local economic development, increased awareness of the role of trees for community health for city staff;
- Access to quality outdoor spaces: improved sense of community, opportunities for sustainable livelihoods for community-based organizations;
- Access to greenspace/change in tree cover: increased tree canopy in high-risk areas, reduced loss of canopy, number and demographics of people with 10-minute walk access to park with minimum tree canopy coverage;

- Stormwater management and extreme heat abatement: reduced stormwater runoff, increased evapotranspiration, reduced land surface temperatures and/or percent of increased shade availability;
- Improved public health: incidence of asthma, incidence of heat related mortality/morbidity;
- Social Benefit Indicators: improved social, economic and community health conditions, development and continuity of community leadership, and reduced barriers to community participation.

## 3. Capability and Capacity:

**Center for Regenerative Solutions** has worked for three years to support practitioners in the rapidly emerging field of natural, living systems-based climate solutions to grow carbon-rich, climate-resilient communities. CRS' fiscal sponsor, **Urban Sustainability Directors Network**, has worked for 15 years to create equitable, resilient, and sustainable communities by advancing the field of local government sustainability and equipping practitioners to be catalysts of transformative change for an equitable, resilient, and sustainable future for all. As one entity, the program leaders within these organizations bring tremendous expertise and decades of experience managing complex national programs like *Accelerating Urban Forestry as Equity-Centered Climate Action and Sustainable Community Development.*

Organizational roles and main points of contact:

- **CRS - Kirsten Maynard** will serve as day-to-day contact, leading project management, forestry project case management, technical assistance support, and customer service to sub-awardees
- **USDN - Jamal Brown** will serve as financial contact, leading the project's financial management, grant administration, impact measurement and reporting

With decades of experience, CRS/USDN leaders will provide their expertise in roles funded at least partially by this request:

- **Brett KenCairn**, CRS Executive Director: will serve this work with high-level oversight and guidance of the team's overall forestry project case management, technical assistance Accelerator, and impact measurement to ensure alignment with evaluation criteria
- **Laurene Hamilton,** USDN Executive Director: will provide oversight and guidance to the USDN team's overall efforts for fiscal responsibility and impact reporting management
- **Kirsten Maynard,** CRS Director of National Initiatives: will serve as project lead, overseeing all sub-awardee projects and directing the technical assistance Accelerator, including metrics/measurement, impact assessments, reporting, and communications
- **Jamal Brown**, USDN Director of Finance: will serve as financial lead to oversee budget and align grant management processes and budget with federal guidelines
- **Ellena Ignacio**, CRS Accelerator Operations Manager: will manage operations of the technical assistance Accelerator and oversee operations for CRS
- **Bryan Parsons**, USDN Data, Evaluation, and Research Manager: will implement program data collection, evaluation, and formatting data for reporting

- **Daniela Uribe**, CRS Forestry Project Case Manager: will support sub-awardee technical assistance delivery, impact measurement, and reporting
- **Susanna Sutherland**, USDN Grant Manager: will serve the financial facilitation of sub-awardee contracts and payments, and support the internal CRS/USDN team

New positions to be created and supported by this grant will serve essential roles in implementing and managing key program elements:

- CRS Portfolio Manager: manage the Portfolio and Stage 2 sub-awardee forestry projects, oversee sub-award processes to ensure impact and alignment with USFS and program goals
- CRS Stage 2 Sub-Award Coordinator: will help administer grants and support sub-awardees with project and reporting oversight
- USDN Program Manager: will support forestry project management, sub-awardee project tracking, impact assessment and reporting
- USDN Financial Manager: will oversee all financial transactions, create financial reports, and ensure compliance with USDA Grants & Agreements guidelines

**4.     Evidence of Disadvantaged Community Status for projects requesting Match Waiver (if applicable):**

Sub-awardees in the CRS/USDN *Accelerating Urban Forestry as Equity-Centered Climate Action and Sustainable Community Development* program will show their projects benefit CEJST-identified underserved neighborhoods through equitable urban forestry practices that emphasize economic and workforce development outcomes. The technical assistance Accelerator will help cities create leading-edge initiatives alongside their local community and nonprofit groups in neighborhoods that are nature-deprived due to historical racial and socioeconomic inequities. Sub-awarded projects will be evaluated by CEJST and cross-checked against other approved tools: EJScreen, EPA EnviroAtlas Interactive Map, Opportunity Zones, and the USFS Tree Canopy Cover Datasets.

# Exhibit C

**FEDERAL FINANCIAL ASSISTANCE**
**AWARD OF COOPERATIVE AGREEMENT 24-CA-11132544-016**
**Between The**
**URBAN SUSTAINABILITY DIRECTORS NETWORK**
**And The**
**USDA, FOREST SERVICE**
**STATE, PRIVATE & TRIBAL FORESTRY**
**COOPERATIVE FORESTRY**

Project Title: Accelerating Urban Forestry as Equity Centered Climate Action and Sustainable Community Development, Inflation Reduction Act Urban and Community Forestry National Pass Through Partnership.

Upon execution of this document, an award to the Urban Sustainability Directors Network, hereinafter referred to as "USDN," in the amount of **$28,000,000.00**, is made under the authority of the Cooperative Forestry Assistance Act, Public Law 95-313, as amended, 16 USC 2015 and Public Law 117-169, Subtitle D, Section 2303(a). The Federal Assistance Listing (formerly Catalog of Federal Domestic Assistance - CFDA) number and name are 10.727, Inflation Reduction Act Urban & Community Forestry Program. USDN accepts this award for the purpose described in the application narrative. Your application for Federal financial assistance, as submitted through grants.gov, and revised December 1, 2023, along with the attached Forest Service provisions, 'Forest Service Award Provisions,' are incorporated into this letter and made a part of this award.

This authority requires a match of 1:1 match, however, match has been waived under the provision of Public Law 117-169, Inflation Reduction Act, and based on assurance from USDN that 100% of the work and funding will benefit disadvantaged communities.

Submit all performance and financial reports to: SM.FS.WOSPFReports@usda.gov.

This is an award of Federal financial assistance. Prime and sub-recipients to this award are subject to the OMB guidance in subparts A through F of 2 CFR Part 200 as adopted and supplemented by the USDA in 2 CFR Part 400. Adoption by USDA of the OMB guidance in 2 CFR 400 gives regulatory effect to the OMB guidance in 2 CFR 200 where full text may be found.

Electronic copies of the CFRs can be obtained at the following internet site: www.ecfr.gov. If you are unable to retrieve these regulations electronically, please contact your Grants and Agreements Office at rhonda.horn@usda.gov.

The following administrative provisions apply to this award:

    A.   <u>LEGAL AUTHORITY</u>. USDN shall have the legal authority to enter into this award, and the institutional, managerial, and financial capability to ensure proper planning, management, and completion of the project, which includes funds sufficient to pay the non-Federal share of project costs, when applicable.



**Caring for the Land and Serving People**

Printed on Recycled Paper



Award Number: 24-CA-11132544-016
OMB 0596-0217
Expiration Date: 11/30/2017
Rev. (12-13)

B.  <u>STATEMENT OF SUBSTANTIAL INVOLVEMENT</u>.  The Forest Service anticipates involvement in this Cooperative Agreement and intends on being substantially involved in the following way(s):

1.  Forest Service review and approval of assigned sub-award grant agreements with the National Pass-Through Partner (NPTP) before any work begins related to the unallocated reserve funding.
2.  Forest Service review and approval of any proposed competitive process for new sub-awards.
3.  Forest Service consultation in the selection of key recipient personnel, if requested by the NPTP.
4.  Forest Service and recipient collaboration and joint participation. Clearly identify specific tasks to be accomplished by each party in the narrative section of the Cooperative Agreement.
5.  Forest Service providing specific direction or redirection of the work during performance because of interrelationships with other sub-awardees or partners.
6.  Forest Service review and approval of NPTP tracking and accomplishment reporting system for Urban and Community Forestry IRA sub-award projects.
7.  Forest Service participating in the presentation of results in publications.
8.  Forest Service does not permit the recipient's principal investigator or project manager to change methods and procedures employed in performing the project without prior approval of the authorized Forest Service program manager unless the methods and procedures employed are stated as specific objectives in the project.

C.  <u>NATIONAL PASS-THROUGH PARTNERS RESPONSIBILITIES</u>: To alleviate the administrative burden on small, capacity-strained applicants, to expedite funding to communities in greatest need, and to increase opportunities to award high volumes of grants in condensed timeframes, USDN has agreed to serve as a National Pass-Through Partner.

The responsibilities associated with this designation include the following:

1.  Subaward a minimum of 80% of all funding received to community-based organizations and/or other partners serving disadvantaged communities. Competition required by the Inflation Reduction Act will be satisfied by that which has already occurred in response to the public Notice of Funding Opportunity and/or future equal opportunity competitive processes supported by robust outreach efforts to reach disadvantaged communities, especially urban communities, tribal governments and indigenous communities, youth, and/or public minority serving land grant institutions, for awareness of the availability of funding.
2.  Develop a subaward process that ensures efficient and effective fund dispersal and completion of projects. All subaward projects must be completed within the performance period of the National Pass-Through Partner's agreement.
3.  Create an efficient performance and financial reporting system for subaward projects that aligns with the reporting requirements of this agreement and the

national impact dashboard and supports timely submission of reports and success stories.

4.  Manage all subawards through development, implementation, and closeout with monitoring and technical assistance.
5.  Assist subawards with development and distribution of communications and promotional materials that support the funded program of work and reflect IRA as the source of funding.

D.  <u>PRINCIPAL CONTACTS</u>.  Individuals listed below are authorized to act in their respective areas for matters related to this award.

**Principal Cooperator Contacts:**

| Cooperator Program Contact | Cooperator Administrative Contact |
|---|---|
| Jamal Brown, Director of Finance, People and Culture 500 Westover Drive, #14973 Sanford, NC 27330-8941 Telephone: 504-813-4482 Email: jamalbrown@usdn.org | Jamal Brown, Director of Finance, People and Culture 500 Westover Drive, #14973 Sanford, NC 27330-8941 Telephone: 504-813-4482 Email: jamalbrown@usdn.org |

**Principal Forest Service Contacts:**

| Forest Service Program Manager Contact | Forest Service Administrative Contact |
|---|---|
| Brooke McFarland, National Program Specialist, Urban & Community Forestry 201 14th Street, SW Washington, DC 20250 Telephone: 771-216-5514 Email: brooke.mcfarland@usda.gov | Rhonda Horn, Grants Management Specialist 201 14th Street, SW Washington, DC 20250 Telephone: 303-960-5614 Email: rhonda.horn@usda.gov |

E.  <u>SYSTEM FOR AWARD MANAGEMENT REGISTRATION REQUIREMENT (SAM)</u>.  USDN shall maintain current organizational information and the original Unique Entity Identifier (UEI) provided for this agreement in the System for Award Management (SAM) until receipt of final payment. This requires annual review and updates, when needed, of organizational information after the initial registration. More frequent review and updates may be required for changes in organizational information or agreement term(s). Any change to the original UEI provided in this agreement will result in termination of this agreement and de-obligation of any remaining funds. For purposes of this agreement, System for Award Management (SAM) means the Federal repository into which an entity must provide information required for the conduct of

business as a Cooperative. Additional information about registration procedures may be found at the SAM Internet site at www.sam.gov.

F.    ADVANCE AND REIMBURSABLE PAYMENTS – FINANCIAL ASSISTANCE. Advance and reimbursable payments are approved under this award.  Only costs for those project activities approved in (1) the initial award, or (2) modifications thereto, are allowable.  Requests for payment must be submitted on Standard Form 270 (SF-270), Request for Advance or Reimbursement, and must be submitted no more than monthly.  In order to approve a Request for Advance Payment or Reimbursement, the Forest Service shall review such requests to ensure advances or payments for reimbursement are in compliance and otherwise consistent with OMB, USDA, and Forest Service regulations.

Advance payments must not exceed the minimum amount needed or no more than is needed for a 30-day period, whichever is less.  If the Recipient receives an advance payment and subsequently requests an advance or reimbursement payment, then the request must clearly demonstrate that the previously advanced funds have been fully expended before the Forest Service can approve the request for payment. Any funds advanced, but not spent, upon expiration of this award must be returned to the Forest Service.

The Program Manager reserves the right to request additional information prior to approving a payment.

| The invoice must be sent by one of three methods: | Send a copy to: |
|---|---|
| EMAIL (mandatory): SM.FS.asc_ga@usda.gov  FAX:  877-687-4894  POSTAL:  Albuquerque Service Center Payments – Grants & Agreements 101B Sun Ave NE Albuquerque, NM  87109 | Brooke McFarland brooke.mcfarland@usda.gov |

G.    ELECTION OF DE MINIMIS INDIRECT RATE. USDN has elected to use the *de minimis* indirect cost rate of 10% of modified total direct costs (MTDC) as allowed under 2 CFR 200.414 (f).  This rate must be used consistently for all Federal awards until such time as  USDN chooses to negotiate for a rate, which they may apply to do at any time.  If a new rate is negotiated and utilized the *de minimis* rate can no longer be utilized.

H.    PRIOR WRITTEN APPROVAL.  USDN shall obtain prior written approval pursuant to conditions set forth in 2 CFR 200.407.

I.    MODIFICATIONS.  Modifications within the scope of this award must be made by mutual consent of the parties, by the issuance of a written modification signed and dated by all properly authorized signatory officials, prior to any changes being

Award Number: 24-CA-11132547-076

performed. Requests for modification should be made, in writing, at least 30 days prior to implementation of the requested change. The Forest Service is not obligated to fund any changes not properly approved in advance.

J.    PERIOD OF PERFORMANCE. This agreement is executed as of the date of the Forest Service signatory official signature.

   The end date, or expiration date is **11/30/2028**. This instrument may be extended by a properly executed modification. *See Modification Provision above*.

K.    AUTHORIZED REPRESENTATIVES. By signature below, each party certifies that the individuals listed in this document as representatives of the individual parties are authorized to act in their respective areas for matters related to this award. In witness whereof the parties hereto have executed this award.

Jamal Brown
Digitally signed by Jamal Brown
Date: 2023.12.06 11:01:28 -06'00'

_____
JAMAL BROWN                                              Date
Director of Finance, People and Culture
Urban Sustainability Directors Network

STEVEN KOEHN
Digitally signed by STEVEN KOEHN
Date: 2023.12.11 13:46:40 -05'00'

_____
STEVEN W. KOEHN                                          Date
Director, Cooperative Forestry
USDA Forest Service, State, Private and Tribal Forestry

The authority and the format of this award have been reviewed and approved for signature.

Rhonda Horn
Digitally signed by Rhonda Horn
Date: 2023.12.04 10:20:32 -07'00'

_____
RHONDA HORN                                              Date
USDA Forest Service Grants Management Specialist

# ATTACHMENT A:  FOREST SERVICE AWARD PROVISIONS

A.  <u>COLLABORATIVE ARRANGEMENTS</u>.  Where permitted by terms of the award and Federal law, USDN a may enter into collaborative arrangements with other organizations to jointly carry out activities with Forest Service funds available under this award.

B.  <u>FOREST SERVICE LIABILITY TO THE RECIPIENT</u>.  The United States shall not be liable to USDN for any costs, damages, claims, liabilities, and judgments that arise in connection with the performance of work under this award, including damage to any property owned by USDN or any third party.

C.  <u>NOTICES</u>.  Any notice given by the Forest Service or USDN will be sufficient only if in writing and delivered in person, mailed, or transmitted electronically by e-mail or fax, as follows:

> To the Forest Service Program Manager, at the address specified in the award.

> To USDN, at the address shown in the award or such other address designated within the award.

Notices will be effective when delivered in accordance with this provision, or on the effective date of the notice, whichever is later.

D.  <u>SUBAWARDS</u>. Prior approval is required to issue subawards under this grant.  The intent to subaward must be identified in the approved budget and scope of work and approved in the initial award or through subsequent modifications.  Approval of each individual subaward is not required, however the cooperator must document that each sub-recipient does NOT have active exclusions in the System for Award Management (sam.gov).

The Cooperator must also ensure that they have evaluated each subrecipient's risk in accordance with 2 CFR 200.332 (b).

Any subrecipient under this award must be notified that they are subject to the OMB guidance in subparts A through F of 2 CFR Part 200, as adopted and supplemented by the USDA in 2 CFR Part 400.  Any sub-award must follow the regulations found in 2 CFR 200.331 through .333.

All subawards $30,000 or more must be reported at <u>fsrs.gov</u> in compliance with 2 CFR 170.  *See Attachment B for full text.*

E.  <u>FINANCIAL STATUS REPORTING</u>.  A Federal Financial Report, Standard Form SF-425 (and Federal Financial Report Attachment, SF-425A, if required for reporting multiple awards), must be submitted  semi-annually. These reports are due 30 days after the reporting period ending June 30th and December 31st.  The final SF-425 (and SF-425A, if applicable) must be submitted either with the final payment request or no later

than 120 days from the expiration date of the award. These forms may be found at
https://www.grants.gov/web/grants/forms.html.

F.  PROGRAM PERFORMANCE REPORTS.  The recipient shall perform all actions
identified and funded in application/modification narratives within the performance
period identified in award.

In accordance with 2 CFR 200.301, reports must relate financial data to performance
accomplishments of the federal award.

USDN shall submit semi-annual performance reports.  These reports are due 30 days
after the reporting period ending June 30th and December 31st.  The final performance
report shall be submitted either with USDN's final payment request, or separately, but
not later than 120 days from the expiration date of the award.

Additional pertinent information: To support consistent and transparent public access to
project outcomes funded through the Inflation Reduction Act, grantees are required to
report quantitative and qualitative project accomplishments for reporting periods ending
June 30th and December 31st to a public-facing Impact Reporting Platform. Grantees
will be provided instructions for project impact-reporting.

G.  NOTIFICATION.  USDN shall immediately notify the Forest Service of developments
that have a significant impact on the activities supported under this award.  Also,
notification must be given in case of problems, delays or adverse conditions that
materially impair the ability to meet the objectives of the award.  This notification must
include a statement of the action taken or contemplated, and any assistance needed to
resolve the situation.

H.  CHANGES IN KEY PERSONNEL.  Any revision to key personnel identified in this
award requires notification of the Forest Service Program Manager by email or letter.

I.  USE OF FOREST SERVICE INSIGNIA.  In order for USDN to use the Forest Service
insignia on any published media, such as a Web page, printed publication, or
audiovisual production, permission must be granted by the Forest Service's Office of
Communications (Washington Office).  A written request will be submitted by Forest
Service, Program Manager, to the Office of Communications Assistant Director, Visual
Information and Publishing Services prior to use of the insignia.  The Forest Service
Program Manager will notify USDN when permission is granted.

J.  PURCHASE OF EQUIPMENT.  Equipment approved for purchase under this award is
available only for use as authorized.  Title to the equipment rests with the Recipient as
long as the equipment is used for its intended purpose.

The Forest Service reserves an interest in any equipment where the Forest Service's
proportionate share of the per-unit value is $5,000 or greater.  Valuation is based on
current fair-market value. To ensure that the federal interest is properly recorded, the

recipient shall file a UCC1 form with the applicable State government agency and provide evidence of the filing to the Forest Service Program Manager at the time payment is requested for the equipment purchase, or within 30 days of an advance of funds for the purchase. The recipient is expected to maintain the UCC filing until the equipment has a fair market value of less than $5,000 or is otherwise disposed of following instructions from the Forest Service. The equipment may not be used as collateral, sold, or otherwise transferred to another party without the written permission of the Forest Service.

The Recipient shall inventory equipment acquired in part or in whole with Forest Service funds annually/biannually (select one) and shall submit a copy of the inventory to the Program Manager. A final inventory shall be submitted for closeout. The Recipient may use Tangible Personal Property Report Standard Forms (SF) 428 and SF-428-S, Supplemental Sheet, or Recipient's equivalent inventory report. The annual/biannual (select one) report must be filed December 31, due within 90 days, but no later than March 31 of the following year. The final report must be due within 120 days from the expiration date of the award.

The Recipient shall use the Tangible Personal Property Report Standard Forms (SF) 428 and SF-428-C, Disposition Request, should the Recipient determine any item of equipment is no longer needed or has been lost, destroyed, or stolen. After receipt of the SF-428-C, the Forest Service shall issue disposition instructions within 120 days.

K.  <u>PUBLIC NOTICES</u>. It is Forest Service's policy to inform the public as fully as possible of its programs and activities. USDN is encouraged to give public notice of the receipt of this award and, from time to time, to announce progress and accomplishments.

USDN may call on Forest Service's Office of Communication for advice regarding public notices. USDN is requested to provide copies of notices or announcements to the Forest Service Program Manager and to Forest Service's Office Communications as far in advance of release as possible.

L.  <u>FOREST SERVICE ACKNOWLEDGED IN PUBLICATIONS, AUDIOVISUALS, AND ELECTRONIC MEDIA</u>. USDN shall acknowledge Forest Service support in any publications, audiovisuals, and electronic media developed as a result of this award. Follow direction in USDA Supplemental 2 CFR 415.2.

M.  <u>NONDISCRIMINATION STATEMENT – PRINTED, ELECTRONIC, OR AUDIOVISUAL MATERIAL</u>. USDN shall include the following statement, in full, in any printed, audiovisual material, or electronic media for public distribution developed or printed with any Federal funding.

*In accordance with Federal law and U.S. Department of Agriculture (USDA) civil rights regulations and policies, this institution is prohibited from discriminating on the basis of race, color, national origin, sex, age, disability, and reprisal or*

*retaliation for prior civil rights activity. (Not all prohibited bases apply to all programs.)*

*Program information may be made available in languages other than English. Persons with disabilities who require alternative means of communication for program information (e.g., Braille, large print, audiotape, and American Sign Language) should contact the responsible State or local Agency that administers the program or USDA's TARGET Center at (202) 720-2600 (voice and TTY) or contact USDA through the Federal Relay Service at (800) 877-8339.*

*To file a program discrimination complaint, a complainant should complete a Form AD-3027, USDA Program Discrimination Complaint Form, which can be obtained online at https://www.ocio.usda.gov/document/ad-3027, from any USDA office, by calling (866) 632-9992, or by writing a letter addressed to USDA. The letter must contain the complainant's name, address, telephone number, and a written description of the alleged discriminatory action in sufficient detail to inform the Assistant Secretary for Civil Rights (ASCR) about the nature and date of an alleged civil rights violation. The completed AD-3027 form or letter must be submitted to USDA by:*

> *(1) Mail: U.S. Department of Agriculture, Office of the Assistant Secretary for Civil Rights, 1400 Independence Avenue SW, Washington, D.C. 20250-9410; o*
> *(2) Fax: (833) 256-1665 or (202) 690-7442; or*
> *(3) Email: program.intake@usda.gov.*

If the material is too small to permit the full Non-Discrimination Statement to be included, the material will, at a minimum, include the alternative statement:

**"This institution is an equal opportunity provider."**

N.  **DISPUTES.**  In the event of any issue of controversy under this agreement, the parties may pursue Alternate Dispute Resolution (ADR) procedures to voluntarily resolve those issues. These procedures may include, but are not limited to conciliation, facilitation, mediation, and fact finding.

Should the parties be unable to resolve the issue of controversy through ADR, then the Signatory Official will make the decision.  A written copy of the decision will be provided to the Cooperator.

Decisions of the Signatory Official shall be final unless, within 30 days of receipt of the decision of the Signatory Official, the Cooperator appeals the decision to the Forest Service's Deputy Chief, State, Private, and Tribal Forestry (SPTF). Any appeal made under this provision shall be in writing and addressed to the Deputy Chief, SPTF, USDA, Forest Service, Washington, DC 20024. A copy of the appeal shall be concurrently furnished to the Signatory Official.

A decision under this provision by the Deputy Chief, SPTF, is final. The final decision by the Deputy Chief, SPTF, does not preclude the Cooperator from pursuing remedies available under the law.

O.   <u>AWARD CLOSEOUT</u>.  USDN must submit, no later than 120 calendar days after the end date of the period of performance, all financial, performance, and other reports as required by the terms and conditions of the Federal award.

Any unobligated balance of cash advanced to USDN must be immediately refunded to the Forest Service, including any interest earned in accordance with 2 CFR 200.344(d).

If this award is closed without audit, the Forest Service reserves the right to disallow and recover an appropriate amount after fully considering any recommended disallowances resulting from an audit which may be conducted later.

P.   <u>TERMINATION</u>.  This award may be terminated, in whole or part pursuant to 2 CFR 200.340.

Q.   <u>DEBARMENT AND SUSPENSION</u>.  USDN shall immediately inform the Forest Service if they or any of their principals are presently excluded, debarred, or suspended from entering into covered transactions with the federal government according to the terms of 2 CFR Part 180.  Additionally, should USDN or any of their principals receive a transmittal letter or other official federal notice of debarment or suspension, then they shall notify the Forest Service without undue delay.  This applies whether the exclusion, debarment, or suspension is voluntary or involuntary.  The Recipient shall adhere to 2 CFR Part 180 Subpart C in regards to review of sub-recipients or contracts for debarment and suspension.

All subrecipients and contractors must complete the form AD-1048, Certification Regarding Debarment, Suspension, Ineligibility and Voluntary Exclusion, Lower Tier Covered Transactions.  Blank forms are available electronically.  Completed forms must be kept on file with the primary recipient.

R.   <u>MEMBERS OF CONGRESS</u>.  Pursuant to 41 U.S.C. 22, no member of, or delegate to, Congress shall be admitted to any share or part of this award, or benefits that may arise therefrom, either directly or indirectly.

S.   <u>TRAFFICKING IN PERSONS</u>.

1. Provisions applicable to a Recipient that is a private entity.

   a. You as the Recipient, your employees, Subrecipients under this award, and Subrecipients' employees may not:
      (1) Engage in severe forms of trafficking in persons during the period of time

that the award is in effect;
(2) Procure a commercial sex act during the period of time that the award is in effect; or
(3) Use forced labor in the performance of the award or subawards under the award.

b. We as the Federal awarding agency may unilaterally terminate this award, without penalty, if you or a Subrecipient that is a private entity:
(1) Is determined to have violated a prohibition in paragraph a.1 of this award term; or
(2) Has an employee who is determined by the agency official authorized to terminate the award to have violated a prohibition in paragraph a.1 of this award term through conduct that is either:
  i. Associated with performance under this award; or
  ii. Imputed to you or the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB Guidelines to Agencies on Government wide Debarment and Suspension (Nonprocurement),''.

2. Provision applicable to a Recipient other than a private entity. We as the Federal awarding agency may unilaterally terminate this award, without penalty, if a subrecipient that is a private entity:
a. Is determined to have violated an applicable prohibition in paragraph a.1 of this award term; or
b. Has an employee who is determined by the agency official authorized to terminate the award to have violated an applicable prohibition in paragraph a.1 of this award term through conduct that is either—
  (1) Associated with performance under this award; or
  (2) Imputed to the subrecipient using the standards and due process for imputing the conduct of an individual to an organization that are provided in 2 CFR part 180, ''OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement),''

3. Provisions applicable to any recipient.
a. You must inform us immediately of any information you receive from any source alleging a violation of a prohibition in paragraph a.1 of this award term.
b. Our right to terminate unilaterally that is described in paragraph a.2 or b of this section:
  (1) Implements section 106(g) of the Trafficking Victims Protection Act of 2000 (TVPA), as amended (22 U.S.C. 7104(g)), and
  (2) Is in addition to all other remedies for noncompliance that are available to us under this award.
c. You must include the requirements of paragraph a.1 of this award term in any subaward you make to a private entity.

4. Definitions. For purposes of this award term:
   a. ''Employee'' means either:
     (1) An individual employed by you or a subrecipient who is engaged in the performance of the project or program under this award; or
     (2) Another person engaged in the performance of the project or program under this award and not compensated by you including, but not limited to, a volunteer or individual whose services are contributed by a third party as an in-kind contribution toward cost sharing or matching requirements.
   b. ''Forced labor'' means labor obtained by any of the following methods: the recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force, fraud, or coercion for the purpose of subjection to involuntary servitude, peonage, debt bondage, or slavery.
   c. ''Private entity'':
     (1) Means any entity other than a State, local government, Indian tribe, or foreign public entity, as those terms are defined in 2 CFR 175.25.
     (2) Includes:
        i. A nonprofit organization, including any nonprofit institution of higher education, hospital, or tribal organization other than one included in the definition of Indian tribe at 2 CFR 175.25(b).
        ii. A for-profit organization.
   d. ''Severe forms of trafficking in persons,'' ''commercial sex act,'' and ''coercion'' have the meanings given at section 103 of the TVPA, as amended (22 U.S.C. 7102).

T.   <u>DRUG-FREE WORKPLACE</u>.

1. USDN agree(s) that it will publish a drug-free workplace statement and provide a copy to each employee who will be engaged in the performance of any project/program that receives federal funding.  The statement must
   a. Tell the employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in its workplace;
   b. Specify the actions USDN will take against employees for violating that prohibition; and
   c. Let each employee know that, as a condition of employment under any award, the employee:

     (1) Shall abide by the terms of the statement, and
     (2) Shall notify USDN in writing if they are convicted for a violation of a criminal drug statute occurring in the workplace, and shall do so no more than 5 calendar days after the conviction.

2. USDN agree(s) that it will establish an ongoing drug-free awareness program to inform employees about
   a. The dangers of drug abuse in the workplace;
   b. The established policy of maintaining a drug-free workplace;

Award Number: 24CA1TH32547-016

      c. Any available drug counseling, rehabilitation and employee assistance programs; and

      d. The penalties that you may impose upon them for drug abuse violations occurring in the workplace.

3. Without the Program Manager's expressed written approval, the policy statement and program must be in place as soon as possible, no later than the 30 days after the effective date of this instrument, or the completion date of this award, whichever occurs first.

4. USDN agrees to immediately notify the Program Manager if an employee is convicted of a drug violation in the workplace. The notification must be in writing, identify the employee's position title, the award number of each award on which the employee worked. The notification must be sent to the Program Manager within 10 calendar days after USDN learns of the conviction.

5. Within 30 calendar days of learning about an employee's conviction, USDN must either

      a. Take appropriate personnel action against the employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1973 (29 USC 794), as amended, or

      b. Require the employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for these purposes by a Federal, State or local health, law enforcement, or other appropriate agency.

U.   <u>PROHIBITION AGAINST USING FUNDS WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS</u>.

1. The recipient may not require its employees, contractors, or subrecipients seeking to report fraud, waste, or abuse to sign or comply with internal confidentiality agreements or statements prohibiting or otherwise restricting them from lawfully reporting that waste, fraud, or abuse to a designated investigative or law enforcement representative of a Federal department or agency authorized to receive such information.

2. The recipient must notify its employees, contractors, or subrecipients that the prohibitions and restrictions of any internal confidentiality agreements inconsistent with paragraph (1) of this award provision are no longer in effect.

3. The prohibition in paragraph (1) of this award provision does not contravene requirements applicable to any other form issued by a Federal department or agency governing the nondisclosure of classified information.

4. If the Government determines that the recipient is not in compliance with this award provision, it;

      a. Will prohibit the recipient's use of funds under this award in accordance with sections 743, 744 of Division E of the Consolidated Appropriations Act, 2016, (Pub. L. 114-113) or any successor provision of law; and

    b.  May pursue other remedies available for the recipient's material failure to comply with award terms and conditions.

V.    <u>ELIGIBLE WORKERS</u>.  USDN shall ensure that all employees complete the I-9 form to certify that they are eligible for lawful employment under the Immigration and Nationality Act (8 U.S.C. 1324(a)).  USDN shall comply with regulations regarding certification and retention of the completed forms.  These requirements also apply to any contract or supplemental instruments awarded under this award.

W.    <u>FREEDOM OF INFORMATION ACT (FOIA)</u>.  Public access to award or agreement records must not be limited, except when such records must be kept confidential and would have been exempted from disclosure pursuant to Freedom of Information regulations (5 U.S.C. 552).  Requests for research data are subject to 2 CFR 315(e).

Public access to culturally sensitive data and information of Federally-recognized Tribes may also be explicitly limited by P.L. 110-234, Title VIII Subtitle B §8106 (2009 Farm Bill).

X.    <u>TEXT MESSAGING WHILE DRIVING</u>.  In accordance with Executive Order (EO) 13513, "Federal Leadership on Reducing Text Messaging While Driving," any and all text messaging by Federal employees is banned: a) while driving a Government owned vehicle (GOV) or driving a privately owned vehicle (POV) while on official Government business; or b) using any electronic equipment supplied by the Government when driving any vehicle at any time.  All Cooperators, their Employees, Volunteers, and Contractors are encouraged to adopt and enforce policies that ban text messaging when driving company owned, leased or rented vehicles, POVs or GOVs when driving while on official Government business or when performing any work for or on behalf of the Government.

Y.    <u>PROMOTING FREE SPEECH AND RELIGIOUS FREEDOM</u>.  As a recipient of USDA financial assistance, you will comply with the following:
1. Do not discriminate against applicants for sub-grants on the basis of their religious character.
2. 7 Code of Federal Regulations (CFR) part 16.3(a), Rights of Religious Organizations.
3. Statutory and National policy requirements, including those prohibiting discrimination and those described in Executive Order 13798 promoting free speech and religious freedom, 2 CFR 200.300.

Z.    <u>PROHIBITION ON CERTAIN TELECOMMUNICATIONS AND VIDEO SURVEILLANCE SERVICES OR EQUIPMENT</u>. The cooperator (including subrecipients) is responsible for compliance with the prohibition on certain telecommunications and video surveillance services or equipment identified in 2 CFR 200.216. See Public Law 115-232, Section 889 for additional information.

Award Number: 24-CA-TH32544-016

In accordance with 2 CFR 200.216, the grantee (including subrecipients) is prohibited from obligating or expending loan or grant funds for covered telecommunications equipment or services to:

(1) Procure or obtain, extend or renew a contract to procure or obtain;

(2) Enter into a contract (or extend or renew a contract) to procure; or

(3) Obtain the equipment, services or systems.

# ATTACHMENT B:  2 CFR PART 170

**Appendix A to Part 170—Award Term**

I. Reporting Subawards and Executive Compensation
a. *Reporting of first-tier subawards.*
 1. *Applicability.* Unless you are exempt as provided in paragraph d. of this award term, you must report each action that equals or exceeds $30,000 in Federal funds for a subaward to a non-Federal entity or Federal agency (see definitions in paragraph e. of this award term).
 2. *Where and when to report.*
  i. The non-Federal entity or Federal agency must report each obligating action described in paragraph a.1. of this award term to *http://www.fsrs.gov.*
  ii. For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)
 3. *What to report.* You must report the information about each obligating action that the submission instructions posted at *http://www.fsrs.gov specify.*
b. *Reporting total compensation of recipient executives for non-Federal entities.*
 1. *Applicability and what to report.* You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if—
  i. The total Federal funding authorized to date under this Federal award equals or exceeds $30,000 as defined in 2 CFR 170.320;
  ii. in the preceding fiscal year, you received—
   (A) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards), and
   (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and,
  iii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at *http://www.sec.gov/answers/execomp.htm.*)
 2. *Where and when to report.* You must report executive total compensation described in paragraph b.1. of this award term:
  i. As part of your registration profile at *https://www.sam.gov.*
  ii. By the end of the month following the month in which this award is made, and annually thereafter.
c. *Reporting of Total Compensation of Subrecipient Executives.*
 1. *Applicability and what to report.* Unless you are exempt as provided in paragraph d. of this award term, for each first-tier non-Federal entity subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most

highly compensated executives for the subrecipient's preceding completed fiscal year, if—

    i. in the subrecipient's preceding fiscal year, the subrecipient received—

        (A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards) and,

        (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

    ii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at *http://www.sec.gov/answers/execomp.htm.*)

2. *Where and when to report.* You must report subrecipient executive total compensation described in paragraph c.1. of this award term:

    i. To the recipient.

    ii. By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (*i.e.,* between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

d. *Exemptions.*

If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

    i. Subawards, and

    ii. The total compensation of the five most highly compensated executives of any subrecipient.

e. *Definitions.* For purposes of this award term:

1. Federal Agency means a Federal agency as defined at 5 U.S.C. 551(1) and further clarified by 5 U.S.C. 552(f).

2. Non-Federal *entity* means all of the following, as defined in 2 CFR part 25:

    i. A Governmental organization, which is a State, local government, or Indian tribe;

    ii. A foreign public entity;

    iii. A domestic or foreign nonprofit organization; and,

    iv. A domestic or foreign for-profit organization

3. *Executive* means officers, managing partners, or any other employees in management positions.

4. *Subaward:*

    i. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

    ii. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see 2 CFR 200.331).

    iii. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

Award Number: 24-CA-1H32541-016

5. *Subrecipient* means a non-Federal entity or Federal agency that:
   i.   Receives a subaward from you (the recipient) under this award; and
   ii.  Is accountable to you for the use of the Federal funds provided by the subaward.
6. *Total compensation* means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)).

END OF ATTACHMENT B:  2 CFR PART 170

Award Number: 24CAT H32547-076

# ATTACHMENT C:  WHISTLEBLOWER NOTICE

Whistleblowers perform an important service to USDA and the public when they come forward with what they reasonably believe to be evidence of wrongdoing.  They should never be subject to reprisal for doing so. Federal law protects federal employees as well as personal services contractors and employees of Federal contractors, subcontractors, grantees, and subgrantees against reprisal for whistleblowing.  USDA bears the responsibility to ensure that nothing in a non-disclosure agreement which a contractor, subcontractor, grantee, or subgrantee requires their employees to sign should be interpreted as limiting their ability to provide information to the Office of Inspector General (OIG).

41 U.S.C. § 4712 requires the head of each executive agency to ensure that its contractors inform their workers in writing of the rights and remedies under the statute. Accordingly, it is illegal for a personal services contractor or an employee of a Federal contractor, subcontractor, grantee, or subgrantee to be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure.  In this context, these categories of individuals are whistleblowers who disclose information that the individual reasonably believes is evidence of one of the following:

*   Gross mismanagement of a Federal contract or grant;
*   A gross waste of Federal funds;
*   An abuse of authority relating to a Federal contract or grant;
*   A substantial and specific danger to public health or safety; or
*   A violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

To be protected under 41 U.S.C. § 4712, the disclosure must be made to one of the following:

*   A Member of Congress, or a representative of a committee of Congress;
*   The OIG;
*   The Government Accountability Office (GAO);
*   A Federal employee responsible for contract or grant oversight or management at USDA;
*   An otherwise authorized official at USDA or other law enforcement agency;
*   A court or grand jury; or
*   A management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct.

Under 41 U.S.C. § 4712, personal services contractors as well as employees of contractors, subcontractors, grantees, or subgrantees may file a complaint with OIG, who will investigate the matter unless they determine that the complaint is frivolous, fails to allege a violation of the prohibition against whistleblower reprisal, or has been addressed in another proceeding. OIG's investigation is then presented to the head of the executive agency who evaluates the facts of the investigation and can order the contractor, subcontractor, grantee, or subgrantee

to take remedial action, such as reinstatement or back pay.

Federal Acquisition Regulation (FAR) Subpart 3.903, *Whistleblower Protections for Contractor Employees, Policy*, prohibits government contractors from retaliating against a contract worker for making a protected disclosure related to the contract.  FAR Subpart 3.909-1 prohibits the Government from using funds for a contract with an entity that requires its employees or subcontractors to sign internal confidentiality statements prohibiting or restricting disclosures of fraud, waste, or abuse to designated persons. This prohibition does not contravene agreements pertaining to classified information. The regulation also requires contracting officers to insert FAR clause 52.203-17, *Contractor Employee Whistleblower Rights and Requirement to Inform Employees of Whistleblower Rights,* in all solicitations and contracts that exceed the Simplified Acquisition Threshold as defined in FAR Subpart 3.908. This clause requires notification to contractor employees that they are subject to the whistleblower rights and remedies referenced in 41 U.S.C. § 4712.

In order to make a complaint alleging any of the violations mentioned above, one should complete the OIG Hotline form located at: https://www.usda.gov/oig/hotline.  For additional information, they may also visit the WPC's webpage at: https://www.usda.gov/oig/wpc or they may directly contact the WPC at OIGWPC@oig.usda.gov.