IN THE UNITED STATES COURT DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| URBAN SUSTAINABILITY DIRECTORS NETWORK et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, et al., <br><br> *Defendants*. | Case No. 1:25-cv-01775-BAH |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXTEND AND REQUEST FOR SANCTIONS**

Plaintiffs' request that instead of extending the deadline (yet again) for Defendants to produce a proper administrative record—which they filed nearly two weeks *after* the deadline passed—the Court impose sanctions on Defendants in the form of an adverse inference. In the alternative, Plaintiffs request that the Court order Defendants to comply with the Court's and Defendants' prior statements on what should be included in the Administrative Record by Monday, December 22, 2025, noting sanctions will follow if the record is still incomplete. And Plaintiffs request until January 12, 2026, to propose a new path forward.

    **I.**    **Defendants have engaged in gross misconduct for months**.

On June 5, Plaintiffs filed this case alleging that their and hundreds of other grants were terminated pursuant to an unlawful policy to defund diversity, equity, and inclusion (DEI)- and climate change-related work, and then amended their Complaint on June 24. ECF Nos. 1, 10. Shortly thereafter, on June 26, Plaintiffs moved for a preliminary injunction. ECF No. 14. Plaintiffs contemporaneously moved for expedited discovery on how Defendants identified grants for

1

termination to effectuate the Administration's anti-DEI and climate policies. ECF No. 15. Specifically, Plaintiffs sought a "description of the process by which Defendants identified and decided to terminate or did terminate Plaintiffs' Grants and any other grants for failing to effectuate or otherwise align with USDA's priorities" against DEI and climate, and a "list of all [such] grants." *Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.* ("USDN"), No. 1:25-cv-1775, 2025 WL 2374528, at *10 (D.D.C. Aug. 14, 2025) (quoting ECF No. 15, at 5).

At the August 6, 2025, hearing on the motions, the Court made clear its expectations "that the government will produce [an] administrative record relating to the March [13], 2025, directives, that that will be part of the administrative record and how those came about and how they were applied and what the process was." PI Hrg. Tr. at 64:2-6, 72:12-19.[1] The Court stated—and defense counsel agreed—that items and information asked for in Plaintiffs' discovery requests about the agency-wide policy would be part of the administrative record. *Id.* at 66:12-19.

On August 14, 2025, the Court granted Plaintiffs' motion for a preliminary injunction of their individual terminations on the basis that they were unreasoned and, for certain Plaintiffs, were contrary to statute, but denied the motion as to Plaintiffs' policy claim because the record had not been sufficiently developed. *USDN*, 2025 WL 2374528, at *28. The Court explained that to assess Plaintiffs' anti-DEI and climate policy claim, "[a] more fulsome administrative record, including termination letters for other grants and information revealing defendants' decision-making and implementation process" was first required. *Id.* at *28.

---

[1] Plaintiffs are prepared to submit exhibits providing the relevant records cited herein, as well as a declaration attesting to all new facts. However, Plaintiffs worked to expedite this filing to quickly respond to Defendants' motion so that the Court would have its position before ruling on the motion.

The Court denied Plaintiffs' motion for expedited discovery on the basis that there was not yet evidence that a record produced by Defendants would show bad faith or be so bare as to frustrate judicial review. *Id.* at *40. At this point, Defendants had not yet produced the Administrative Record, so the Court had before it only the documents Plaintiffs had submitted. In denying expedited discovery, the Court explicitly relied on Defendants' **"assurance at the motions hearing that the administrative record would include what plaintiffs have requested in their discovery motion, as well as materials reflecting 'the process' defendants took when evaluating the grants at issue."** *Id.* (emphasis added).

On September 17, 2025, Defendants provided Plaintiffs with the Administrative Record. The accompanying certification filed by Defendants stated that the Administrative Record constitutes all "non-privileged documents that were considered in connection with the Department's termination of Plaintiffs' Federal financial assistance awards." ECF No. 37. It did not certify that it contained all (or even any) documents relevant to Defendants' agency-wide policy alleged by Plaintiffs, other than those relevant to Plaintiffs' terminations.

On September 24, 2025, Plaintiffs' counsel emailed Defendants' counsel with a list of categories of documents omitted from the Administrative Record. Six days later, Defendants' counsel stated that USDA "anticipates that they are going to be able to supplement many of the items you listed in your September 24, email" and that USDA "need[ed] time to locate all of these documents." The only documents that Defendants categorically refused to include in the record at that time were the complete set of termination letters.

Based on defense counsel's representations, Plaintiffs agreed to delay a motion to supplement the Administrative Record. On October 1, 2025, the parties submitted a Joint Status Report in which Defendants represented to the Court that they had "reviewed the items that

3

Plaintiffs seek to add to the administrative record and have *determined that many of these items can be added* but Defendants require time to locate these documents and determine if any portions of them are privileged." ECF No. 38, at 2 (emphasis added). Accordingly, the Court ordered Defendants to produce the supplemented Administrative Record within three weeks of the conclusion of the government shutdown. *See* Oct. 2, 2025, Minute Order.

The government shutdown ended November 12, making the deadline for Defendants to supplement the record December 4. Immediately upon the government's reopening, on November 13, 2025, to aid in Defendants' search for record documents, Plaintiffs provided Defendants with a letter that: (i) reiterated the categories of documents Plaintiffs believed existed and were missing from the Administrative Record; (ii) identified specific missing documents, which in the parties' subsequent meet and confer Defendants acknowledged were in their possession; and (iii) listed likely custodians of additional documents that should be included in the Administrative Record. In addition, Plaintiffs' letter provided Defendants with a USDA policy document that both proved the existence of other documents and itself should have been in the Administrative Record.

The December 4, 2025, deadline for Defendants' supplement passed, and Defendants produced nothing. Instead, defense counsel emailed at 10:00 PM the day the supplement was due and told Plaintiffs' counsel that they are "unable to further supplement the administrative record based on your requests in [Plaintiffs'] letter." In that email, Defendants for the first time offered to orally meet and confer over their production.

At the parties' subsequent videoconference meet and confer on December 9—held after the Court-ordered deadline for supplementation—Plaintiffs asked Defendants why they failed to provide a basic supplement. Defense counsel's acknowledged that they had made a mistake noted that people were behind due to the shutdown. He did not explain how the shutdown impacted their

4

ability to complete the Administrative Record in a case filed six months ago, where Defendants assured the Court four months ago that they would produce the supplemental documents, and where Defendants had three additional weeks following the shutdown to do so. Defendants also did not explain differences between their prior representations that they would supplement the record and their new position that they would not. And Defendants did not confirm what—if any—search they had undertaken to locate documents responsive to Plaintiffs' inquiries.

**II.     Defendants' latest filing only increases their misconduct.**

Defendants' representation to the Court that they did not understand they had a deadline to supplement the Administrative Record and that therefore, an out-of-time extension is justified, ECF No. 43, at 1, is implausible on numerous levels.

(1) It does not explain how Defendants could ignore the Court's earlier statements requiring a more robust *initial* Administrative Record. *See USDN,* 2025 WL 2374528, at *40.

(2) In the parties' October 1, 2025, joint status report, Defendants asked the Court to establish a deadline "to supplement the Administrative Record." ECF No. 38, at 2.

(3) Both Plaintiffs' November 13th letter and a follow-up email from November 24th state that the upcoming deadline was for the newly supplemented Administrative Record—not merely for meet and confer over its contents;

(4) Defendants' December 4, 2025, email to Plaintiffs in which they noted they would not be supplementing the record indicates that they understood they had a deadline to supplement.

(5) At the parties' December 9, 2025, meet and confer, Defendants never mentioned that they misunderstood that December 4, 2025, was their deadline to supplement the Administrative Record.

(6) Defendants' alleged misunderstanding is inconsistent with Defendants' prior representations to the Court and the multiple correspondence Plaintiffs sent.

Tellingly, Defendants only claimed to have misread the Court's October 2, 2025, Minute Order and did not understand they had a deadline to supplement *after* Plaintiffs informed them that Plaintiffs were prepared to move for an order to complete the record or in the alternative for sanctions. In response, Defendants now attempt to whitewash their misconduct with the Court.

Defendants also conveniently omit mention of their conduct leading up their motion. Defendants notified Plaintiffs at around 3:15pm on December 16 that they intended to file a motion to extend the (already long expired) deadline to supplement the record. They then provided Plaintiffs approximately three hours to take a position on Defendants' proposal, and then refused to include Plaintiffs' statements on their request—including Plaintiffs' request for sanctions—in Defendants' motion, ECF No. 43, at 1, despite Plaintiffs' providing it to Defendants hours before Defendants' filing.

Notably, Defendants have also failed to provide any information as to what will be in their late supplement. The fact that Defendants now believe they can supplement in days what they previously told the Court would require weeks suggests either the supplement will be substantially lacking or Defendants have again misrepresented the facts to the Court.

### III.     Sanctions are warranted.

Federal Rule of Civil Procedure 37 and this Court's inherent powers empower the Court to sanction Defendants' failure to produce a supplemented Administrative Record. "Several courts, including a court of appeals, have held that a prior court order to produce or complete an administrative record can be the basis for Rule 37 sanctions." *Goose Creek Physical Med., LLC v. Becerra*, No. 2:22-cv-03932, 2024 WL 3653639, at *8 (D.S.C. Aug. 5, 2024) (citing *Diaz-Fonseca*

*v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006); *New York v. U.S. Dep't of Com.*, 461 F. Supp. 3d 80, 94 (S.D.N.Y. 2020); *Nat'l Urb. League v. Ross*, No. 20-cv-05799, 2020 WL 5548117, at *5 (N.D. Cal. Sep. 15, 2020)); *see also Oak Grove Techs., LLC v. United States,* 156 Fed. Cl. 594, 613 (Fed. Cl. 2021) (granting Rule 11 sanctions for a plaintiff "dealing with the administrative record issues" created by the government), *aff'd*, 116 F.4th 1364 (Fed. Cir. 2024). The D.C. Circuit has also made clear that "[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap." *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995).

In this case, an adverse inference is an appropriate sanction for Defendants' actions. *See Shepherd*, 62 F.3d at 1475; *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 61–62 (D.D.C. 2023) (Howell, J.). The test is whether there was "a discovery order in place" that was violated. *Freeman*, 691 F. Supp. 3d at 62 (quoting *Saravia v. Yuan Profit, Inc.*, No. 20-232, 2023 WL 2585675, at *3 (D.D.C. Mar. 17, 2023)). "[A] district court may impose [such an] issue-related sanction[] whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue." *Shepherd*, 62 F.3d at 1478.

That standard is met here. This Court denied Plaintiffs' request for discovery based on the understanding that the *initial* Administrative Record would contain the requested materials, as defense counsel represented to this Court. *USDN*, 2025 WL 2374528, at *40; *see also* PI Hrg. Tr. Excerpts 60:20-61-7; 64:2-8; 72:12-19. When Defendants failed to meet that obligation, the Court ordered Defendants to supplement the Administrative Record within three weeks of the end of the government shutdown—by December 4. *See* Oct. 2, 2025, Minute Order. It did so based on another affirmative representation that Defendants could and would be producing the documents at issue

7

here. ECF No. 38 at 2. Defendants now acknowledge they failed to supplement by the deadline. ECF No. 43, at 3.

In fact, as Defendants were aware, Plaintiffs were preparing to file a motion detailing all of the records' deficiencies. Indeed, documents in Plaintiffs' possession and already in the Administrative Record prove Defendants have not taken the basic steps necessary to complete the record. The only reason Plaintiffs have not proceeded with that motion is Defendants' motion for an extension that seemed designed to preempt Plaintiffs' filing.

"[W]here relevant information is in the possession of one party and not produced, an adverse inference may be drawn that the information would be harmful to the party which failed to produce it." *United States v. Atlas Lederer Co.*, No. 3:91cv309, 2012 WL 89976, at *5 (S.D. Ohio Jan. 11, 2012) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 712 (6th Cir.2007)). A "flagrant violation" such as the one at issue here is particularly worthy of that sanction. *Freeman*, 691 F. Supp. 3d at 62.

Courts have also employed a multi-factor balancing test before imposing an adverse inference that leads to the same result.

> When a district court exercises its discretion to select sanctions appropriate to the particular violation, it should consider four factors: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Goose Creek Physical Med.*, 2024 WL 3653639, at *5. Defendants' repeat blatant misconduct demonstrates both that they acted in bad faith and the need for deterrence. The fact that Defendants are government entities also establishes that a monetary sanction will be ineffective because the offending individuals will not pay it. Finally, for all the reasons described above and in the Court's prior decision, the withheld evidence is central to this matter.

Thus, rather than ordering Defendants to supplement the Administrative Record, as an alternative the Court can issue sanctions creating an adverse inference that Defendants terminated all DEI- and climate-related grants based solely on the presence of DEI- and climate-related search terms in grant documents. As Plaintiffs would have detailed in their motion to complete the Administrative Record, Defendants have failed to produce any evidence to the contrary, but what records they have produced prove search terms were employed to collect DEI- and climate-related grants for termination. Their gamesmanship surrounding a supplement also raises concerns as to whether any records they may produce will create a complete and accurate record.

This Court has noted that where an adverse inference is "[t]he most expeditious way" to provide relief, it can be the most appropriate remedy. *Freeman*, 691 F. Supp. 3d at 63 n.10. As Defendants' now concede, their misconduct has only caused unwarranted delay. ECF No. 43, at 3. An adverse inference is appropriate.

### IV.     In the alternative, the Court should provide Plaintiffs time to respond.

If the Court authorizes Defendants' late supplement, in light of the time needed to review those documents and the holidays, the Court should provide Plaintiffs until January 12, 2026, to propose next steps. This is more than reasonable given that it is Defendants' misconduct that has brought us to this point. For the reasons stated above, Plaintiffs also recommend that the Court make clear that if the December 22, 2025, supplement is lacking, sanctions will follow.

### V.     Conclusion.

For the foregoing reasons, Plaintiffs request that the Court grant an adverse inference that Defendants' termination of all terminated DEI- and climate-related grants was based solely on the appearance of DEI- and climate-related search terms in grant documents. Plaintiffs further request that, should the Court allow Defendants to supplement the Administrative Record by December

22, 2025, it make clear that Defendants' failure to complete the record within the deadline will result in that sanction, and provide Plaintiffs until January 12, 2026, to recommend a path forward.

DATED: December 17, 2025

Respectfully submitted,

/s/ Carrie Apfel
Carrie Apfel
DC Bar No. 974342
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001
(202) 667-4500
capfel@earthjustice.org

| | |
|---|---|
| Scott W. Carlson | Holly Bainbridge |
| MN Bar No. 338400 (*Pro Hac Vice*) | DC Bar No. 90021466 (*Pro Hac Vice*) |
| Benajmin E. Apple | David Muraskin |
| NC Bar No. 52009 (*Pro Hac Vice*) | DC Bar No. 1012451 |
| Farmers Justice Center | FarmSTAND |
| 6 Fifth Street West, Suite 650 | 712 H Street NE, Suite 2534 |
| St. Paul, MN 55102 | Washington, DC 20002 |
| (651) 204-1664 | (202) 595-8816 |
| scott.carlson@farmersjustice.org | holly@farmstand.org |
| ben.apple@farmersjustice.org | david@farmstand.org |

*Counsel for Plaintiffs*