IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| URBAN SUSTAINABILITY DIRECTORS NETWORK et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF AGRICULTURE, et al., <br><br> *Defendants*. | Case No. 1:25-cv-01775-BAH |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SANCTIONS**

Defendants attempt to downplay the significance of their misconduct and avoid sanctions by insisting the record they produced was largely sufficient and suggesting they have a right to solely determine the scope of the Administrative Record. ECF No. 47, at 1-2. They are wrong on both fronts. To the contrary, under the prevailing standard for what constitutes a proper administrative record and a review of what Defendants produced (and failed to produce), there is no doubt this Court has power to order an adverse inference, particularly if Defendants' planned supplement continues to leave glaring gaps—as they imply is likely even after their late supplement, ECF No. 47, at 4.

As a preliminary matter, Defendants' argument that Plaintiffs' request for sanctions is procedurally deficient, *see* ECF No. 47, at 2, is wrong on multiple levels. Defendants argue Plaintiffs failed to comply with Rule 11, but ignore that Plaintiffs invoked this Court's power to issue sanctions under Rule 37 and its inherent powers. ECF No. 45, at 6-7. Accordingly, Defendants do not discuss, let alone distinguish the numerous cases Plaintiffs provide holding that discovery sanctions are warranted where the government fails to produce the required

1

administrative record. *E.g.*, *Goose Creek Physical Med., LLC v. Becerra*, No. 2:22-cv-03932, 2024 WL 3653639, at *8 (D.S.C. Aug. 5, 2024) (citing *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006)); *New York v. U.S. Dep't of Com.*, 461 F. Supp. 3d 80, 94 (S.D.N.Y. 2020); *Nat'l Urb. League v. Ross*, No. 20-cv-05799, 2020 WL 5548117, at *5 (N.D. Cal. Sep. 15, 2020)); *see also Shepherd v. Am. Broad. Cos., Inc.,* 62 F.3d 1469, 1474 (D.C. Cir. 1995).

Moreover, Defendants' claim that Plaintiffs had to wait 21 days to seek sanctions *under Rule 11* misstates *that* rule. It provides a request for sanctions cannot be "presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Having now fully responded to Plaintiffs' argument, Defendants have not withdrawn or corrected any of their misrepresentations. Instead, Defendants ask the Court and Plaintiffs to believe their latest representation that they misunderstood the deadline for supplementing the record and will prepare a proper supplement is credible—despite their failure to act consistently with their prior representations. *But see* ECF No. 45, at 5-6 (explaining why Defendants' latest representation is not credible).

Likewise, there was nothing deficient in Plaintiffs' service—an argument for which Defendants again solely rely on Rule 11. Service can be accomplished through ECF, exactly what was done here. Fed. R. Civ. P. 5(b)(2)(E). As a result, Defendants were able to respond to Plaintiffs' motion the same day it was filed.

Turning to Defendants' claim that the existing Administrative Record saves them, they are wrong on the law and the substance. As this Court has explained, an administrative record "must include all documents that the agency directly or indirectly considered." *Am. Wild Horse Pres. Campaign v. Salazar*, 859 F. Supp. 2d 33, 41 (D.D.C. 2012) (Howell, J.) (citation omitted). This

includes "all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision." *Id.* (citation omitted). "The goal, ultimately, is for the Court to have before it a 'record that delineates the path by which the agency reached its decision.'" *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. CV 16-1534 (JEB), 2019 WL 2028709, at *2 (D.D.C. May 8, 2019) (brackets omitted) (quoting *Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 338 (D.C. Cir. 1989)). "The agency may not, however, skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question." *Env't Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978).

While the record an agency produces "is entitled to a strong presumption of regularity," that presumption is not absolute. *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13 (D.D.C. 2015). A plaintiff may add evidence to the record in "one of two ways": by seeking to include "evidence that should have been properly a part of the administrative record but was excluded by the agency" or by "supplementing the record with extra-judicial evidence that was not initially before the agency but which the party believes should nonetheless be included in the administrative record." *Id*. at 13 (cleaned up).

As relevant here, the former requires the plaintiff to "identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Am. Wild Horse*, 859 at 42 (citation omitted).[1] Documents should be added to the record: "(1) if the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,' (2) if background information was needed 'to determine whether the agency

---

[1] Plaintiffs reserve the right to move to supplement the Administrative Record with extra-record evidence if the need arises at the summary judgment stage.

considered all the relevant factors,' or (3) if the 'agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (citation omitted); *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010) ("If an agency did not include materials that were part of its record, whether by design or accident, then supplementation is appropriate.").

Here, the current Administrative Record contains a paltry 30 pages of documents related to the broad policy that Plaintiffs challenge.[2] That is deficient in at least four ways.

*First*, the Court instructed that the Administrative Record must include documents reflecting how the USDA Secretary's directives to discontinue funding of DEI- and climate-change-related work came about. Bainbridge Decl., Ex. A, PI Hrg. Tr. Excerpts at 64:2-8, 72:12-19. Yet the current Administrative Record shows nothing of the sort despite numerous references to the existence of and likely sources of documents that would demonstrate how USDA came to adopt this policy. For example, USDA emails in the Administrative Record reference that the agency received direction on how to implement the Administration's anti-DEI and climate priorities, but do not include information on what that direction was. AR 0019, 0035.[3] The record demonstrates USDA used a "data call"—particularly, search terms— to identify DEI- and climate-related grants. AR 0023, 0033. That "data call" was referred to as the "OPM data call," but there are no communications with OPM in the Administrative Record. AR 0023. The Administrative

---

[2] The remaining pages of the Administrative Record are dedicated to the regulatory text for grant oversight, two memorandums that relate only to a pause on entering new grants (not terminations of existing grants), and select documents related to Plaintiffs' individual awards. *See* ECF No. 37-1 (Administrative Record Index).

[3] The relevant portions of the Administrative Record are attached as Exhibit G to the Declaration of Holly Bainbridge, filed herewith, and are cited herein as "AR" followed by the Bates number. That declaration also provides the documents Plaintiffs referenced in their opening brief.

Record also shows that Defendants added additional search terms during the "data call," but does not explain why. AR 0023, 0033-36. Further, in the parties' meet and confer, defense counsel admitted that USDA relied on guidance from the U.S. Office of Management and Budget ("OMB") in creating its termination policy. Bainbridge Decl. ¶ 9. Yet again, there is nothing from OMB in the Administrative Record. These are but some of the missing documents related to initiation of the policy.

*Second*, the Administrative Record shows that as part of the search-term-based "data call," USDA staffers were instructed to complete spreadsheets with information about those grants, including "[e]valuat[ing]" them for termination. AR 0022-23, 0036; *see also* AR 0030 (another spreadsheet asking "OCFO Only: Evaluated?"). But the record lacks any information about how staff were instructed to perform an "evaluation" of each award—and thus there is no evidence the "evaluation" was substantive rather than a mere confirmation of the presence of search term. Likewise, USDA's Office of the Chief Financial Officer ("OCFO") was asked to determine whether a grant was "in-scope," (AR 0027, 0040), but the record is devoid of information on what that term means or how it was determined. Again, there is no evidence that OCFO did anything more than confirm the existence of the search terms in the grants.

Yet the Administrative Record suggests the existence and obvious sources of such instructions. For instance, on January 23, OCFO sent a meeting invite to subagency heads titled, "Urgent: New Daily Data Call and Direction to Terminate Specific Awards," explaining the meeting was "for the specific agencies and staff offices who will be required to complete a daily data call and take action to terminate specific awards." AR 0019. Meeting agendas and notes from that call would likely include any instruction provided. OCFO also repeatedly asked that subagency heads direct any data call questions to Chelsea Cole (Chelsea.Cole@usda.gov) and a

5

designated email account, FFAC@usda.gov. *E.g.*, AR 0022-23. The record contains only six emails from Chelsea Cole and none to or from FFAC@usda.gov. *See* AR 0018-22, 0031-37.

*Third*, the Administrative Record states that staff entering information on the spreadsheets were directed not to terminate awards. AR 0022, 0036. Instead, the Administrative Record shows that the USDA Office of the Secretary ("OSEC") made termination decisions for the climate-related awards (AR 0036) and more vaguely, "executive leadership" made termination decisions for DEI-related awards (AR 0023). But the record lacks any information on how leadership made these determinations. Absent evidence that leadership actually and sufficiently scrutinized grants in making the termination decisions, it can be inferred that they merely signed off on terminations based on the appearance of the search terms.

After noticing the absence of any documents related to how the termination decisions were made, Plaintiffs provided Defendants with a USDA Budget Office policy document that shows that if a grant included "DEIA or EJ language . . . OSEC will decide on whether to terminate the agreement or modify the scope of work." Bainbridge Decl., Ex. D, Nov. 13, 2025 Bainbridge Letter at Attachment A. At the parties' meet and confer, Defendants confirmed that they possess this document, yet they provided no explanation as to why it was not included in the record and did not agree to supplement the record with it (Bainbridge Decl. ¶ 12)—even though it is certainly a "material that might have influenced the agency's" policy on how termination decisions would be made. *Am. Wild Horse*, 859 F. Supp. 2d at 41.

The Administrative Record currently does not even contain documents showing leadership's ultimate bases for the terminations, which is most obviously communicated in non-deliberative form through the universe of termination letters—letters the Court explicitly stated

should be produced to evince the alleged policy. *Urb. Sustainability Directors Network v. United States Dep't of Agric.*, No. CV 25-1775 (BAH), 2025 WL 2374528, at *28 (D.D.C. Aug. 14, 2025).

*Fourth*, the Administrative Record lacks many documents related to Plaintiffs' grants. While Defendants included in the record select documents related to each of Plaintiffs' grants, ECF No. 37-1 (listing individual award documents), at minimum they omitted the following:

- The Notice of Funding Opportunity or equivalent document for each Plaintiff.
- Project proposals for Agroecology Commons's Community Food grant and Providence Farm Collective's grant.
- Appeal letters for all Plaintiffs other than Institute for Agriculture and Trade Policy, and any response from or communications with USDA in response for all Plaintiffs.
- Any communications within USDA or with other federal agencies or officials about the decisions to terminate these particular awards.
- In relation to Agroecology Commons's announced termination of its Land Access grant, all records related to the USDA's announcement of the termination, internal communications confirming the decision to terminate and basis, and reasoning for the agency's failure to issue a termination notice prior to this lawsuit.

Put simply, any implication by Defendants that the existing record could be deemed sufficient or that Plaintiffs' request to supplement is extraneous is baseless. Defendants have failed to take basic steps to compile a record in this case, ignored self-evident sources of information, dodged the Court's deadlines, failed to substantively respond to deficiencies identified by Plaintiffs, and now seek to minimize their actions by claiming a mere error in timing.

Plaintiffs have made significant efforts going back to September to explain and amicably fill the gaps in the Administrative Record. After continual delay by Defendants, Plaintiffs were prepared to present all these issues to the Court through briefing on a motion to supplement and had proposed a schedule for doing so to Defendants. Rather than work with Plaintiffs on that, as the Court had ordered (Oct. 2, 2025, Minute Order), Defendants filed their motion to extend weeks

after their deadline to supplement had passed. Thus, their claim that Plaintiffs' request for sanctions is deficient—either substantively or procedurally—holds no water.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Plaintiffs' motion, ECF No. 45, Plaintiffs respectfully request that the Court grant an adverse inference that Defendants' termination of all terminated DEI- and climate-related grants was based solely on the appearance of DEI- and climate-related search terms in grant documents.

DATED: December 18, 2025

Respectfully submitted,

/s/ Holly Bainbridge
Holly Bainbridge
DC Bar No. 90021466 (*Pro Hac Vice*)
David Muraskin
DC Bar No. 1012451
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(202) 595-8816
holly@farmstand.org
david@farmstand.org

Scott W. Carlson
MN Bar No. 338400 (*Pro Hac Vice*)
Benajmin E. Apple
NC Bar No. 52009 (*Pro Hac Vice*)
Farmers Justice Center
6 Fifth Street West, Suite 650
St. Paul, MN 55102
(651) 204-1664
scott.carlson@farmersjustice.org
ben.apple@farmersjustice.org

Carrie Apfel
DC Bar No. 974342
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC 20001
(202) 667-4500
capfel@earthjustice.org

*Counsel for Plaintiffs*