# Exhibit A

1:25-cv-01775-BAH

```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

 * * * * * * * * * * * * * * * *
URBAN SUSTAINABILITY DIRECTORS    )  Civil Action
NETWORK, et al.,                  )  No. 25-1775
         Plaintiffs,              )
vs.                               )
                                  )
UNITED STATES DEPARTMENT OF       )  August 6, 2025
AGRICULTURE, et al.               )  10:01 a.m.
         Defendants.              )  Washington, D.C.
 * * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE BERYL A. HOWELL,
UNITED STATES DISTRICT COURT SENIOR JUDGE**

**APPEARANCES**:

FOR THE PLAINTIFFS:
    DAVID S. MURASKIN
    Farmstand
    712 H Street, NE, Suite 2534
    Washington, DC 20002
    (202) 595-8816
    david@farmstand.org Benjamin Apple

    FARMERS' LEGAL ACTION GROUP
    6 W. 5th Street, Suite 650
    St. Paul, MN 55102
    651-204-7203
    ben.apple@farmersjustice.org

    CARRIE F. APFEL
    Earthjustice
    1001 G Street, NW, Suite 1000
    Washington, DC 20001
    (202) 797-4310
    capfel@earthjustice.org

*This transcript is <u>work product</u>.
This transcript shall be considered null and void if the
transcript is edited, printed, disassembled, screenshot, and/or
distributed in any manner by any party without authorization of
the signatory.*

**(Appearances Continued)**

1     don't know that.
2            I do expect that the government will produce
3     administrative record relating to the March 23, 2025,
4     directives, that that will be part of the administrative
5     record and how those came about and how they were applied
6     and what the process was.  If there were DOGE people
7     involved, that will be reflected in the administrative
8     record.
9            I am not as pessimistic as you are that the
10    administrative record here is going to be as sparse or
11    nonexistent as you seem to suggest, which is leading you to
12    make your discovery requests.  So perhaps I will be proven
13    naive, but it just seems premature in an APA case to be
14    seeking an expedited discovery at this point.
15           But let's hear from government counsel.
16           MR. MURASKIN:  One point that may simplify this --
17           THE COURT:  Maybe my optimism will be borne out
18    and your pessimism mitigated.  But we'll see.
19           MR. MURASKIN:  Well, one thing that might simplify
20    things for both the Court and opposing counsel is that we
21    try to position these and explain to the Court that we think
22    of these -- for the policy and practice claim as
23    alternatives, our motion for preliminary injunction and then
24    the discovery requests.
25           If the Court is doubtful of the existence of a

1    discovery request --
2            MR. BARDO:  Sure.
3            THE COURT:  -- because the plaintiffs, with some
4    clarification, I think, this morning, think that --
5    depending on how I am going to come out on the preliminary
6    injunction and think if I need more evidence for that -- I
7    should grant expedited discovery.
8            But I am more interested right now in whether the
9    pessimism that the plaintiffs have about what the
10   administrative record is going to look like in this case is
11   actually accurate.
12           So isn't it -- I mean, in my view, the things that
13   the plaintiffs are asking for in their discovery requests
14   are items and information that will be in the administrative
15   record when that is compiled for purposes of -- if I find on
16   the junctional issue, that I can exercise subject matter
17   jurisdiction here.
18           Do you share that understanding?
19           MR. BARDO:  I do, Your Honor.
20           We will -- we haven't begun compiling an
21   administrative record yet.  I mean, our 60 days to answer
22   the complaint hasn't even come yet.  But, yes, as required
23   by the local rules, there would be an administrative record;
24   and that administrative record would go into the reasoning
25   behind the termination of plaintiffs' grants.

1                    MR. BARDO:  Right.  Yeah.  To me, Your Honor, it
2       doesn't seem that that's appropriate.  But I'm not -- it
3       doesn't appear that that is what was done here.  And I will
4       point to --
5                    THE COURT:  Why does that not appear to have been
6       done here?
7                    MR. BARDO:  It wouldn't be in accordance with best
8       practices for how you review these grants.  There would need
9       to be a much more thorough review than just a "control" find
10      search.
11                   THE COURT:  I would agree with you on that.
12               I would expect that the administrative record will
13      reflect what that process would look -- how that process was
14      performed to identify the grants to be terminated pursuant
15      to the March 13, 2025, letters, no matter whether it was
16      USDA personnel assisting with that identification or DOGE
17      personnel assisting with that identification and, then, what
18      process was pursued after that, if there was one, to
19      terminate the grants as a result of those two memos.
20               Let me just go to those memos for a second and the
21      termination letters specifically because several of the
22      termination letters to plaintiffs all refer to DEI as
23      something the agency no longer supports.  And that is one of
24      the reasons that some of the grants were terminated for the
25      plaintiffs in this case; is that correct?