# Exhibit D

1:25-cv-01775-BAH

 Outlook

## RE: Urban Sustainability v. Dep't of Agriculture - Civ. A. No. 25-1775- Administrative Record

| | |
|---|---|
| From | Holly Bainbridge <holly@farmstand.org> |
| Date | Thu 11/13/2025 12:48 PM |
| To | Bardo, John (USADC) <John.Bardo@usdoj.gov> |
| Cc | David Muraskin <david@farmstand.org>; Carrie Apfel <capfel@earthjustice.org>; Scott Carlson <scott.carlson@farmersjustice.org>; Ben Apple <ben.apple@farmersjustice.org> |

🔗 1 attachment (445 KB)
2025.11.13 25-1775 Letter re AR.pdf;

Hi Jack,

Now that the government has reopened, I'm reaching out to restart communications about completing the administrative record. Please see the attached letter.

Thanks,

**Holly Bainbridge** she/her
**SENIOR ATTORNEY**

520.591.6803
holly@farmSTAND.org
farmSTAND.org

---

**From:** Holly Bainbridge
**Sent:** Wednesday, October 1, 2025 10:32 AM
**To:** 'Bardo, John (USADC)' <John.Bardo@usdoj.gov>; David Muraskin <david@farmstand.org>
**Cc:** Carrie Apfel <capfel@earthjustice.org>; Scott Carlson <scott.carlson@farmersjustice.org>; Ben Apple <ben.apple@farmersjustice.org>
**Subject:** RE: Urban Sustainability v. Dep't of Agriculture - Civ. A. No. 25-1775- Administrative Record

Thanks, Jack. This looks fine to us – we'll get it filed shortly.

**Holly Bainbridge** she/her
**SENIOR ATTORNEY**

520.591.6803
holly@farmSTAND.org
farmSTAND.org



November 13, 2025

John "Jack" Bardo
United States Attorney's Office
601 D Street, NW
Washington, DC 20530

Dear Jack,

In light of the intervening shutdown and subsequent facts we have learned, Plaintiffs write both to summarize our preexisting agreements regarding Defendants' supplementing the administrative record and to provide additional details that might assist with that supplementation.

To recount where we were before the shutdown, on September 17, 2025, you produced Defendants' administrative record with a certification by Tyson Whitney stating it contains the "non-privileged documents that were considered in connection with the Department's termination of Plaintiffs' Federal financial assistance awards." ECF No. 37. However, as reflected in our subsequent exchanges, that too narrowly construed the necessary search. The administrative record should include all documents considered in relation to the policy of terminating grants *en masse*, not just documents related to the Plaintiffs' individual terminations.

On September 24, 2025, I emailed you the categories of documents that Plaintiffs believe are missing from the current administrative record, along with an explanation of why Plaintiffs believe the documents should be included. On September 30, 2025, you responded indicating that Defendants will search for all such categories except for the requested termination letters (see below for response on that category).

Based on the parties' agreement, the Court ordered Defendants to produce a supplement to the Administrative Record within three weeks of the conclusion of the government shutdown. This is to ensure Defendants USDA, its subagencies, and DOGE produce all records they considered directly or indirectly in relation to USDA's allegedly unlawful policy of mass terminating grants at the start of this Administration without individualized reasoning. More specifically, based on the records Defendants have produced thus far, Defendants appear to have relied on DEI- and climate-change-related search terms to identify grants for termination, and may have proceeded to terminate grants without individualized review.

A complete search will not necessarily be limited to the Defendant entities. If, for example, OMB crafted the searches by which USDA identified grants to terminate based on the Administration's

new priorities, the details of those searches must be produced even if they are solely in the possession of OMB. Indeed, the existing administrative record shows that USDA communicated with DOGE and OMB in relation to the terminations (AR 0021, 0040). Communications with outside agencies addressing which grants USDA would terminate must be included in the record so Plaintiffs can assess the policy employed to terminate the grants.

To facilitate that search, we have produced immediately below **in bold** the list of missing materials we identified on September 24 that you previously agreed to search for, supplemented with additional details based on information Plaintiffs have subsequently learned:

- **Records showing how USDA crafted the search terms to identify grants to be terminated, and any documents showing how those search terms would be employed and terminations would be carried out** (*e.g.*, the databases they would be run in, automatic terminations based on search results, supplemental reviews of any search results). For instance:
    - AR 0010 shows the policy resulted from "numerous sessions with all agencies and staff offices of the Department to provide advice on the specific goal of the Administration to terminate 'diversity, equity, and inclusion' (DEI) discrimination in the federal workforce, and in federal contracting and assistance spending." Any documents reflecting the content of those meetings, including agendas, notes, and related emails should be included in the record.
    - Related to this request, Plaintiffs recently learned that the decision flowchart attached as Attachment A was used by USDA in its decision making. It references that OMB would approve or deny any policy for terminations. Accordingly, Plaintiffs expect that communications about USDA's adoption of any policy—including documents from and/or solely in the possession of OMB—would be included in the record, along with this flowchart itself.

- **Records showing how USDA staff was instructed to fill out spreadsheets listing grants that they identified based on the DEI- and climate-related search terms. The spreadsheets appear at AR 0025-30, 0038-40.** In particular, we note:
    - There is no information in the current record on how staff was instructed to fill out the columns with the header for "Evaluation of Award" (AR 0026, 0040). Any direction provided to staff on completing this or any other section of the spreadsheets should be included.
    - USDA Office of the Chief Financial Officer ("OCFO") invited questions via email regarding how to respond to the data call (AR 0022, 0023, 0031). To the



  - extent these emails relate to how staff should fill out the spreadsheet and/or identify grants to list and/or terminate, those emails should be included.
  - As part of responding to this request, Defendants should provide the completed spreadsheets, containing all information on the grants identified via the DEI- and climate-related search terms, including spreadsheets that identified program-wide terminations (AR 0028-30).

- **Records showing whether and how USDA leadership reviewed the spreadsheets to make final termination decisions.**
  - The record makes clear that leadership within USDA reviewed the spreadsheets and had the final say on termination (AR 0022, 0036). Attachment A likewise shows that the USDA Office of the Secretary ("OSEC") was tasked with determining whether awards should be terminated. Thus, Plaintiffs expect that the record will show how these decisions were made, such as any guidance or process for determining whether to terminate based on the information provided by staff in the spreadsheets.
  - The record should also include information on which awards were ultimately terminated vs. not and on what basis. Much of this information should be available on the completed spreadsheet.

- **Specific documents related to Plaintiffs' awards.**
  - The Notice of Funding Opportunity or equivalent document for each Plaintiff
  - Project proposals for Agroecology Commons's Community Food grant, Providence Farm Collective's grant.
  - Appeal letters for all Plaintiffs other than Institute for Agriculture and Trade Policy, and any response from or communications with USDA in response for all Plaintiffs.
  - Any communications within USDA or with other federal agencies or officials about the decisions to terminate these particular awards.
  - In relation to Agroecology Commons's announced termination of its Land Access grant, all records related to the USDA's announcement of the termination, internal communications confirming the decision to terminate and basis, and reasoning for the agency's failure to issue a termination notice prior to this lawsuit.

It is Plaintiffs' understanding that the following individuals are likely to possess emails, calendar items, memorandums, and other documents related to the above that should be added to the Administrative Record:



- **Individuals within USDA**
    - Lucas Castillo, Tyson Whitney, John Rapp, Leslie Barrack, FFAC@usda.gov, and other OCFO staff will likely have records related to the creation and parameters of USDA's termination policy.
    - Certain emails from Chelsea Cole were included in the initial record, but Plaintiffs believe that many more emails in her possession should be added, including those related to creation of the spreadsheets and questions and answers on the data call for the spreadsheets.
    - Gary Washington, Jennifer Tiller, Brooke Appleton, Jacqueline Ponti-Lazaruk, and other OSEC and program-specific leadership are likely to possess records related to the standards employed (if any) to identify grants from the spreadsheets to terminate.

- **Individuals within DOGE**
    - Gavin Kliger and Michael Cole are likely to possess records showing communications between DOGE and USDA about grant terminations, including that related to DOGE's "Agency Efficiency Leaderboard" and use of artificial intelligence in identifying grants for termination.

This is not an exhaustive list of individuals who possess documents that should be included in the administrative record. Plaintiffs expect that Defendants will conduct their due diligence to identify any sources of record documents and include all non-privileged results of their search in the administrative record.

**Plaintiffs' request for all termination letters.** As noted above, my September 24, 2025 email also included a request that all termination letters be included in the administrative record based on Judge Howell's recognition that this is the information sought by our discovery requests, and your and her agreements that they would be part of the record. PI Hrg. Tr. 60:20-61:7; 66:12-19. In your September 30, 2025 email, you were resistant to include all termination letters in the record.

Plaintiffs maintain that the letters should be included in the record because they are relevant to Plaintiffs' claims challenging the policy of unlawfully terminating grants. However, if Defendants include in the record the completed spreadsheets (as is required), that should suffice to show the scope of the policy and then the record need not include every termination letter.

**Plaintiffs' request for a privilege log.** Given your willingness to produce any requested documents other than the termination letters so long as those records are not privileged, Plaintiffs requested a privilege log to cut down on disputes as it will help Plaintiffs identify what was



omitted negligently rather than purposely. You stated you would check with Defendants on their willingness to produce such a log. We would appreciate an update on Defendants' position on the privilege log.

_____

Please provide a response confirming Defendants' willingness to search for the categories identified above, and Defendants' position on Plaintiffs' requests related to the termination letters and privilege log by **November 20, 2025**. We hope that collaboration between the parties can obviate the need for motion practice on the administrative record. If you have any clarifying questions, please do not hesitate to reach out.

Sincerely,

/s/Holly Bainbridge
Holly Bainbridge
DC Bar No. 90021466 (Pro Hac Vice)
FarmSTAND
712 H Street NE
Suite 2534
Washington, DC 20002
520-591-6803
holly@farmstand.org



farmSTAND.org | 712 H Street NE, Suite 2534 Washington, DC 20002 | (202) 595-8816

# Attachment A



***Apply foreign assistance screening criteria for discretionary, mandatory, and fees to CCC Farm Bill foreign assistance funds.