UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| URBAN SUSTAINABILITY DIRECTORS NETWORK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROOKE ROLLINS, Secretary of Agriculture, et al., <br><br> Defendants. | Civil Action No. 25-1775 (BAH) |

## JOINT STATUS REPORT

Pursuant to the Court's May 4, 2026 Minute Order, the parties respectfully submit this joint status report concerning: "their positions on whether this Court may exercise jurisdiction to resolve plaintiffs' [45] Motion for Sanctions and [55] Motion to Supplement the Administrative Record, given the pendency of defendants' appeal of the [29] preliminary injunction order in this matter." The parties set forth their respective positions below, beginning with Plaintiffs' Statement and followed on page 13 by Defendants' Statement.

## PLAINTIFFS' STATEMENT

### I.    Summary of How the Court Has Jurisdiction

This Court has jurisdiction to resolve the pending motions, including ordering supplementation and issuing sanctions, for two primary reasons. *First*, according to the leading treatise on the matter, an appeal of a preliminary injunction should be construed narrowly, enabling district courts to resolve the merits of the underlying case, even if those issues are on appeal. 16 *Wright & Miller's Federal Practice & Procedure, Interlocutory Injunction Appeals—Trial Court*

*Action Pending Appeal*, § 3921.2 (3d ed. West 2026). *Second*, the case law establishes that even where courts indicate interlocutory appeals further limit district court jurisdiction—which can involve other sorts of interlocutory appeals—district courts can proceed on claims unresolved by the order on appeal, *see Humane Soc'y of U.S. v. Johanns*, No. CIVA 06-265 CKK, 2007 WL 1810103, at *3 (D.D.C. June 21, 2007) (appeal of partial grant of summary judgment), including sanctioning a party's subsequent misconduct, as this Court has recognized, *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, No. MC 18-175, 2019 WL 2182436, at *2 (D.D.C. Apr. 10, 2019) (Howell, J.).

Under either approach, this Court has jurisdiction to proceed on Plaintiffs' pending motions. These motions concern distinct claims from those on appeal, including requests for sanctions, that turn on distinct facts from those on appeal. The preliminary injunction relates to the fact that "the terminations of [the five Plaintiffs'] individual grants were likely arbitrary and capricious and, for two of the plaintiffs, also contrary to statute, in violation of the APA," *Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.* ("*USDN*"), No. CV 25-1775 (BAH), 2025 WL 2374528, at *41 (D.D.C. Aug. 14, 2025). That conclusion was based on the specific termination letters each of those Plaintiffs received. By contrast, the pending motions concern Defendants' failure to produce an administrative record "for their alleged policy 'to terminate [DEI and climate-related] grants *en masse*,'" Mot. Suppl., Dkt. No. 55-1, at 1 (brackets in original) (quoting *USDN*, 2025 WL 2374528, at *27), which Plaintiffs' individual terminations might reflect, but this Court has expressly stated depends on a different record. Accordingly, Defendants stated that the issue on appeal is limited to the Court's decision to enjoin the individual terminations, never suggesting it touches on the policy claim. Statement Issues at 1, *U.S. Dep't of Agric. v. Urb. Sustainability Dirs. Network*, No. 25-5370 (D.C. Cir. Nov. 17, 2025).

To the extent the Court is concerned that despite it having jurisdiction over the motions, the appeal might indirectly determine it lacks jurisdiction over the policy claim, recent Supreme Court case law provides otherwise. Justice Barrett recognized that whatever questions have arisen regarding district courts' jurisdiction to address *individual terminations* because of the Tucker Act, district courts have jurisdiction to address unlawful *policies* leading to terminations. *NIH v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2660 (2025) (Barrett, J., concurring). Justice's Barrett's concurrence is the controlling decision in *NIH*. 145 S. Ct. 2658.

Accordingly, under any view of this Court's jurisdiction over the motions or its future jurisdiction over the merits of the policy claim, Defendants' appeal of the preliminary injunction does not limit or even potentially speak to this Court's ability to order completion of the administrative record and issue sanctions for Defendants' repeated failure to do so. It should exercise its jurisdiction and resolve the pending motions in Plaintiffs' favor.[1]

## II. Discussion of How the Court Has Jurisdiction

### a. Under Clearly Established Law, Courts Can Exercise Jurisdiction Over All Matters Not Subject to the Order on Appeal.

"[W]hen a party files a notice of appeal the district court *only* surrenders 'its control over those aspects of the case involved in the appeal.'" *Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548 (D.C. Cir. 1988) (emphasis added) (quoting *Griggs v. Provident*

---

[1] Defendants choose to "not address[]" the jurisdictional issue in their statement below, conceding this Court has jurisdiction. Instead, they argue for a stay of these proceedings while the D.C. Circuit adjudicates whether there is jurisdiction over the *individual termination* claims under the Tucker Act. At the same time, Defendants appear to admit a decision on jurisdiction over *individual terminations* will have no bearing on this courts' jurisdiction over the *policy* claim. Instead, their rationale for a stay is that they disagree with the *merits* of Plaintiffs' *policy* claim; seeming to so strongly believe in this point that they use it as an eleventh-hour attempt to dodge actually litigating that issue. Plaintiffs address Defendants' request in the final section below, first focusing on the question the Court asked.

*Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). *Wright & Miller* explains that where the interlocutory appeal concerns a preliminary injunction, the matter on appeal must be narrowly constructed, enabling the district court to proceed with the merits. "The power to proceed toward decision of the merits must be distinguished from the power to act on the very order that has been appealed," and thus, "[o]rdinarily an interlocutory injunction appeal under § 1292(a)(1) does not defeat the power of the trial court to proceed further with the case." 16 Wright & Miller, *supra*, § 3921.2. Indeed, numerous district courts have taken steps to prepare or resolve the merits while an appeal related to a preliminary injunction is pending. *Id.* § 3921.2 nn.10, 14–18 (citing authority). They have done so despite the fact that appeals of preliminary injunctions might ultimately speak to lower courts' ability to reach those merits. *Id.* § 3921.2. Any other process would undermine the purpose of preliminary injunctions, which are to provide immediate relief based on a limited record. *See id.* § 3921.2.

Even cases that suggest district courts should not act on those claims on interlocutory review provide that if an appeal concerns some claims, jurisdiction over the remaining claims not subject to appeal is "not [] transferred to the Court of Appeals." *Humane Soc'y of U.S*, 2007 WL 1810103, at *3. This includes, for example, "consider[ing] whether to permit discovery" on non-appealed claims while an appeal is pending, *see Loumiet v. United States*, 315 F. Supp. 3d 349, 352 (D.D.C. 2018) (concerning an appeal on immunity), as well as ordering completion of the administrative record, *see Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1337, 1357 (Ct. Int'l Trade 2020). Moreover, the validity of the order on appeal is a "separate question" from whether a party has violated its obligations to the district court to abide by that or other orders. *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, 2019 WL 2182436, at *2. Accordingly, an appeal does not alter the district court's ability to issue

sanctions for disregard of its orders, absent a party obtaining a stay of those orders pending appeal. *Id.* (citing authority).

### b. The Claims Resulting in the Pending Motions Are Not at Issue on Appeal.

Given the above case law, this Court unquestionably has jurisdiction to proceed with the motions at issue here. The litigation raises two categories of claims: those challenging the rationales provided to individual grantees for their grant terminations, and those challenging Defendants' policy that brought about the terminations. Plaintiffs' pending motions make clear they seek supplementation and sanctions in furtherance of their *policy* claims, not Plaintiffs' claims related to the reasons for Plaintiffs' *individual terminations*. Plaintiffs' motions challenge the fact that "[t]he current record is deficient" with regard to "documents that Plaintiffs have reasonable, non-speculative grounds to believe were considered in relation to Defendants' policy to terminate DEI and climate-related awards." Dkt. No. 55-1, at 15. The distinction between the issues presently before this Court and the claim on appeal is confirmed by this Court's preliminary injunction decision, Defendants' statements to the Court of Appeals, and Plaintiffs' request for a stay pending appeal.

### i. Plaintiffs' pending motions.

Plaintiffs' motions detail that supplementation and sanctions are warranted precisely because Defendants limited the current record to "documents considered in connection with the Department's termination of *Plaintiffs*'" specific "federal financial assistance award[s]," wrongly disregarding their need to produce the separate records for "Plaintiffs' policy claim." Reply, Dkt. No. 57, at 1 (quotation marks removed). Plaintiffs describe categories of documents that are missing and which underscore the distance between the claims, including: (i) records demonstrating how USDA, in consultation with other agencies, determined anti-DEI and -climate

related Executive Orders should be applied to all pre-existing grant programs, Mot., Dkt. 55-1, at 17; (ii) specifics on how USDA then gathered information on those grants to meet the Executive's anti-DEI and -climate demands, *id.* at 18; and (iii) any additional considerations by the agency that informed the ultimate terminations under the policy (assuming they exist), *id.* at 19–20.

The final category of documents Plaintiffs seek relates to Plaintiffs' individual awards. Mot., Dkt. No. 55-1, at 21. While those materials would also be produced in response to Plaintiffs' claim that their individual terminations were unlawful, they are independently relevant to Plaintiffs' policy claim, as they relate to Plaintiffs' standing to bring that claim. Their absence also proves Defendants' disregard of the pending, unstayed orders to complete the administrative record. *Id.* at 23. Thus, the Court can issue sanctions related to the fact that these or other documents are missing, or order Defendants to produce those documents, regardless of whether the individual-termination claims are on appeal. Yet were the Court to disagree, that would not strip this Court of jurisdiction to order production of the remaining documents or evaluate whether Defendants' failure to produce those documents warrants sanctions.

*ii.   The preliminary injunction decision.*

The preliminary injunction decision on appeal similarly distinguished between the individual termination and policy claims, explaining like Plaintiffs do, that they are not only different issues, but are based on different records. On the facts before the Court at the preliminary injunctions stage, the Court granted "preliminary relief with respect to the[] six individual grant terminations" because the "reasons stated in [Plaintiffs'] termination letters" (or for one Plaintiff in a "press release announcing [the] termination") were contrary to law and/or arbitrary and capricious. *USDN*, 2025 WL 2374528, at *11, *31; *see also id.* at *31–*36 (explaining the reasons for granting relief).

6

Despite granting such relief, the Court stated it neither could nor needed to resolve Plaintiffs' separate contention that the individual terminations were brought about by an unlawful policy. That required different records not before the Court. "[B]ecause the record lacks sufficient evidence to establish the scope and contours of the alleged policy and practice, no broader relief affecting parties or grants not before this Court is warranted." *Id.* at \*24; *see also id.* at \*11, \*21, \*25 (similar).

*iii.*    *Defendants' statement of issues on appeal.*

Consistent with this distinction between the policy and individual-termination claims, Defendants themselves explained to the D.C. Circuit that their appeal solely challenges the decision to enjoin and set aside the individual terminations. Defendants' statement of the issue to be presented to the Court of Appeals stated in full: "Whether the district court erred in entering a preliminary injunction obligating the federal government to reinstate five grant agreements between federal agencies and grant recipients and to disburse monies pursuant thereto, and further prohibiting the federal government from terminating a sixth grant agreement." Statement Issues at 1, U.*S. Dep't of Agric. v. Urb. Sustainability Dirs. Network*, No. 25-5370 (D.C. Cir. Nov. 17, 2025). Nowhere in the statement did Defendants mention Plaintiffs' challenge to an unlawful policy.

Indeed, Defendants are legally precluded from seeking review of the policy claim as part of the appeal. Appellate jurisdiction over interlocutory appeals of preliminary injunctions is limited to "matters inextricably bound up with issuance of the injunction." *Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1102 (9th Cir. 1994) (quotation marks omitted). While this standard provides some flexibility, "[o]rdinarily the scope of appellate review under § 1292(a)(1) is confined to the issues necessary to determine the propriety of the interlocutory order itself." 16 *Wright & Miller's Federal Practice & Procedure, Interlocutory Injunction Appeals—Scope of*

*Appeal*, § 3921.1 (3d ed. West 2026). "Most obviously" that means the appeal cannot extend to "issues that have not yet been decided by the trial court." *Id.* Fully resolving this matter, it certainly means Courts of Appeals cannot be asked to reach questions the district court determined are not yet "sufficiently illuminated" by the record to be passed upon, *id.*, like the policy claim on which this Court declined to provide relief, and to which the pending motions pertain.

iv.    *Plaintiffs' request for a stay of the appeal.*

Correspondingly, Plaintiffs' request to stay the appeal focused on how pending decisions could inform the courts' authority to review the individual terminations. Plaintiffs explained that the appeal could be aided by waiting on decisions regarding district courts' (as opposed to the Court of Federal Claims') jurisdiction to overturn specific "termination[s] of federal grants." Mot. Abeyance at 5, *U.S. Dep't of Agric. v. Urb. Sustainability Dirs. Network*, No. 25-5370 (D.C. Cir. Nov. 17, 2025); *see also id.* 4 n.1. That is, Plaintiffs stated the jurisdictional question before the Court of Appeals that could be informed by pending decisions is whether a party seeking to reinstate individual grants can proceed in the district court, or whether such a request is "contractual in nature" and belongs in the Court of Federal Claims, and then the Federal Circuit, due to the Tucker Act. *Id*. at 5; *see also id.* at 6.

Justice Barrett's controlling opinion in *NIH*, 145 S. Ct. 2658, 2660, provides that district courts' jurisdiction over individual terminations is separate and apart from their jurisdiction over agency policies that bring about terminations, because the former could be contractual while the latter cannot. She recounts that recent Supreme Court authority raises questions about district courts' ability to reverse "individual [grant] terminations" under the APA because the APA's waiver of sovereign immunity may be limited by the Tucker Act, which sends cases to the Federal Court of Claims. *Id.* at 2661 (citing *Dep't of Ed. v. California*, 604 U. S. 650 (2025) (per curiam)).

8

However, she stated those holdings do not speak to district courts' ability to "declare[] unlawful and vacat[e]" agency "guidance" that results in the terminations. *Id.* "That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the [Court of Federal Claims] can hear. 28 U.S.C. § 1491(a)(1) [the Tucker Act]. So the District Court was likely correct to conclude that it had jurisdiction to entertain an APA challenge to the guidance, and it would be confusing for our disposition of this application to suggest that the CFC is the right forum for that claim." *Id.* (ellipsis in original). In other words, not only does the appeal concern a distinct claim from the policy claim—which this Court recognized relies on distinct facts—but there is not even a theoretical intersection between why the appeal was stayed and the questions raised by the policy claim.

*    *    *

Therefore, under the narrowest view of this Court's jurisdiction, it can adjudicate Plaintiffs' motions; they are based on policy claims that are separate from the claims resolved by the preliminary injunction that is on appeal, as Defendants themselves admitted to the Court of Appeals. Indeed, the claims are not only different, but this Court and Plaintiffs have explained their facts are also different. Even were that not the case, it would be within this Court's authority to move forward all of Plaintiffs' claims while the appeal is pending given the function of preliminary injunctions and appeals thereof. This is to say nothing of the fact that this Court always has authority to issue sanctions for Defendants' misconduct, as Plaintiffs seek in these motions. Accordingly, this Court can and should resolve the motions in full.

*d.   Even Without Jurisdiction the Court Should Provide an Indicative Ruling.*

Were the Court to disagree with the above, it still should address the pending motions: it should provide an "indicative ruling" under Federal Rule of Civil Procedure 62.1(a). *See Koi*

9

*Nation of N. Cal. v. U.S. Dep't of the Interior*, No. CV 17-1718 (BAH), 2019 WL 11555042, at *2 (D.D.C. July 15, 2019) (Howell, J.) (granting such relief). That rule provides, if a motion is made that "the court lacks authority to grant because of an appeal" the district court may "state [] that it would grant the motion if the court of appeals remands for that purpose." Fed. R. Civ. P. 62.1(a)(3). The parties have been litigating the scope of the administrative record and Defendants' violation of this Court's orders to produce that record for months, without Defendants' raising the jurisdictional issue the Court now asks the parties to address. Accordingly, indicating now how this Court would resolve these motions once the matter is remanded is the most efficient way forward. Moreover, given the lengthy stay of the appeal, the Court of Appeals might well decide to remand to resolve the independent policy claim, as that would either streamline matters on appeal or potentially moot the appeal in its entirety.

### III.    Response to Defendants' Request for a Stay

Below Defendants ignore this Court's inquiry and instead request a stay of the proceedings in this Court, so that the D.C. Circuit can first speak to whether it has jurisdiction to overturn individual "grant terminations"—while conceding *NIH* differentiated that jurisdiction from jurisdiction to resolve a "policy or practice claim." Defendants' request for a stay fails for three reasons. *First*, it is procedurally improper. *Second*, Defendants can only dispel the prejudice their request could cause by misstating the issues and record. *Third*, Defendants' own logic establishes the Court should not delay resolving the pending motions.

*i.*    Stays should not be granted when the "request for a stay has at least some dilatory tactical motive behind it." *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 407 (W.D.N.Y. 1999). Plaintiffs filed their request for a stay of appellate proceedings in November 2025, noting the intersection between the preliminary injunction order on appeal and other cases concerning individual

termination claims. The Court of Appeals granted that motion in December 2025. Subsequently the parties filed an entire round of briefing in this Court on the need to supplement and for sanctions related to the separate policy claim. Only now that the Court has indicated it is evaluating those motions do Defendants request a stay. Defendants sat on their hands and only now invoke the need for a stay to dodge the resolution of Plaintiffs' motions. Defendants' request should be denied on that basis alone.

*ii.*    Plaintiffs could be prejudiced by delay in resolving the policy claim. Defendants imply that a stay is warranted because this Court will ultimately not reach the policy claim, as Defendants believe the Court of Appeals will determine this Court lacks jurisdiction over individual terminations, and the policy claim will provide no relief. That argument is a far overreach. The full scope of the remedies for a successful policy claim are inappropriate to litigate as part of a stay motion attached to a Joint Status Report. That question divided the Supreme Court in its short interim order in *NIH*, which dealt with jurisdiction not remedy. 145 S. Ct. 2658. Nonetheless, it is undisputed by Defendants that the policy and individual termination claims are distinct, with distinct bases for jurisdiction, and this Court can hear the former. Thus, Plaintiffs could be significantly prejudiced if the Court delayed reaching the merits of the policy claim and Defendants ultimately prevail on their notion that there is no jurisdiction over the individual termination claims. That would lift the preliminary injunction that has sustained Plaintiffs' grants and leave Plaintiffs without the record to obtain the relief to which they are entitled under the policy claim. It is for these very reasons that Plaintiffs have worked hard to move the policy claims forward in the face of Defendants' delay tactics.[2]

---

[2] Defendants misstate that two Plaintiffs' grants have been spent in full. Plaintiff Providence Farm Collective drew the grant funds into its accounts, as is allowed, but it has yet to incur costs under the grant that would account for the full amount of those funds. Put simply, it is still spending

Moreover, as this Court recounted in its preliminary injunction decision, Defendants arranged to terminate Plaintiff Agroecology Commons' Land Access Program grant because it furthered "woke DEI propaganda," but never actually issued a termination letter. *USDN*, 2025 WL 2374528, at *32–*33. Thus, even if Defendants prevail on their (wholly conclusory and untested) view that Plaintiffs cannot vindicate the other terminations under the policy claim, if Plaintiffs prevail on their claim that the policy under which Agroecology Commons' termination would be carried out is unlawful, Agroecology Commons will be able to keep its grant.[3] But if for some reasons Plaintiffs lose the preliminary injunction on appeal before that issue is decided, Agroecology Commons will again be thrust into economic uncertainty.[4]

Because this prejudice is so obvious, Defendants abandon actually arguing for a stay and take random shots at the merits of Plaintiffs' policy claim. Defendants' complaint that Plaintiffs' description of the policy has been a "moving target" is particularly rich given the present filing concerns Plaintiffs' and the Court's repeated efforts to address Defendants hiding the policy documents. Moreover, Defendants' slipshod analysis relies on a heads we win, tails they lose

---

against the grant and thus the grant's existence still meaningfully impacts Providence Farm Collective's finances.

[3] The need for such forward-looking relief is why Plaintiffs informed the Court that Defendants recently issued termination letters on the other 49 Land Access Program grants and did so pursuant to the same policy at issue here. Notice, Dkt. No. 58. Defendants' continued application of that policy is relevant to proving its scope and unlawfulness and thereby protecting Agroecology Commons going forward.

[4] It is important to note that even if Defendants succeed in their machinations and are able to terminate Agroecology Commons' grant, litigation over that termination decision will not be covered by the case law concerning Tucker Act jurisdiction. Terminations of the Land Access Program grants must be heard by USDA's National Appeals Division and a separate statue provides that "[a] final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5." 7 U.S.C. § 6999. There is separate district court jurisdiction to review individual Land Access grant terminations. Nonetheless, prevailing on the policy claim would enable Agroecology Commons to be secure in its funding.

worldview, where this Court cannot retroactively reverse individual terminations caused by an ongoing unlawful policy, but the Court also cannot craft relief to stop the future unlawful impacts of that policy. To the extent Justice's Barrett's *NIH* opinion speaks to remedy at all (and again it is focused on jurisdiction) this is the opposite of what she indicates. She stated in that case district court litigation should proceed on whether the government could establish "priorities[] [g]oing forward" that "the agency will not fund research related to DEI objectives," among other concerns. 145 S. Ct. at 2661. This is because grantees must be able to save themselves from being subject to future applications of unlawful "internal policies" that agency "guidance discusses," regardless of whether that would restore "their individual grant terminations." *Id.* (notably indicating this relief could pertain to "guidance" documents and the "policies" they discuss, despite Defendants insisting below they will be able to argue relief is limited to the former). Of course, such a complex issue deserves more than this discussion, which is precisely why the Court should resolve the pending motions, which will enable the parties to brief the policy claim.

*iii.*      Defendants' rationale for a stay only underscores that they have not thought through their request and its consequences. Defendants contend a stay is appropriate because it will prevent the Court from reaching summary judgment piecemeal. But the pending motions are not for summary judgment, but rather are to complete the record so that *then* the parties can proceed to briefing the merits of the policy claims. Thus, the logical course is to deny the request, resolve the pending motions, and complete the record so that the parties are ready to brief summary judgment.

Defendants' request for a stay should be denied.

**DEFENDANTS' STATEMENT**

Defendants do not dispute that the pending appeal of the preliminary injunction does not deprive this Court of jurisdiction to resolve Plaintiff's pending Motion for Sanctions (ECF No. 45)

13

and Motion to Supplement the Administrative Record (ECF No. 55), and thus are not addressing Plaintiffs' jurisdictional arguments above on that specific question. Nonetheless, Defendants maintain that the Court should stay further proceedings in this case until the D.C. Circuit rules on *Vera Institute of Justice v. U.S. Department of Justice*, No. 25-5248, and *Climate United Fund v. Citibank, N.A.*, No. 25-5122 because a ruling on those cases could substantially narrow or potentially eliminate the matters at issue in this case, including on broader jurisdictional grounds. Moreover, Defendants respectfully provide a response to Plaintiff's Notice of Factual Developments.

**A.      Judicial Economy Favors Staying this Case Until the D.C. Circuit Issues a Ruling on Climate United or Vera Institute of Justice.**

*Climate United* and *Vera Institute of Justice* would provide binding authority on dispositive questions of law, where courts in this jurisdiction repeatedly referred to the "considerable legal uncertainty" surrounding the Tucker Act in the grant termination context, and observed that the Supreme Court's recent decision in *Department of Education v. California*, 604 U.S. 650 (2025) "left many questions unanswered."  *See Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 216-217, 223 (D.D.C. 2025).   Like this case, *Climate United* involves Administrative Procedure Act, separation-of-powers, and ultra vires claims challenging grant terminations, and the (vacated) D.C. Circuit panel decision applied in *Department of Education*, as well as the Supreme Court's recent decision *in National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658 (2025), when it determined that the grant termination claims were essentially contractual and that jurisdiction lied exclusively in the Court of Federal Claims. *See Climate United*, 154 F.4th 809, 817,  (D.C. Cir. 2025).  For the same reasons that Plaintiffs gave in their motion seeking a stay of proceedings on the preliminary injunction before the D.C. Circuit, a stay of the district court

proceedings, allowing the D.C. Circuit to address the Tucker Act issues *en banc*, undoubtably would promote judicial economy here and no countervailing injustice would result.

Plaintiffs suggest that their policy or practice claim warrants allowing this case to move forward despite the uncertainty regarding the Court's jurisdiction to enjoin grant terminations. But in practice, this would force the parties and the Court to spend time resolving an issue that would not give Plaintiffs relief because what Plaintiffs ultimately seek is restoration of their grant funding. The Supreme Court has already determined that a district court "lack[s] jurisdiction to order the payment of money under the APA" because "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Dep't of Educ. v. California*, 604 U.S. 650 651 (2025). Thus, even if Plaintiffs prevail on their policy or practice claim, Plaintiffs would still need to bring suit in the Court of Federal Claims to obtain payments from their grant agreements.

Plaintiffs highlight Justice Barrett's concurrence in *National Institutes of Health v. American Public Health Association*, 145 S. Ct. 2658 (2025) where Justice Barrett stated that the Supreme Court's holdings in cases like *Department of Education v. California* do not speak to district courts' ability to "declare[] unlawful and vacat[e]" agency "guidance" that results in the terminations. *NIH* 145 S. Ct. at 2261 ("That the agency guidance discusses internal policies related to grants does not transform a challenge to that guidance into a claim 'founded . . . upon' contract that only the [Court of Federal Claims] can hear. 28 U.S.C. § 1491(a)(1) [the Tucker Act]'"). But Plaintiffs do not appear to be challenging guidance, rather, they appear to challenge a policy an alleged, albeit nonexistent, policy of terminating "awarded grants without individualized review

15

but rather based on vague allegations." See Am. Compl. ¶ 132.[5]  Plaintiffs are, in essence, bringing

multiple Tucker Act claims including on behalf of entities that are not parties in this lawsuit.

More broadly, resolving the policy or practice claim while waiting for the D.C Circuit to

rule on the question of Tucker Act jurisdiction would be inefficient because it would require the

parties to litigate this case piecemeal.  As the D.C. Circuit has long recognized, "[r]eplacing one

comprehensive judicial review proceeding . . . with piecemeal proceedings . . . would be a poor

technique of judicial administration, with unfortunate consequences for courts, agencies, and

litigants as well."  *Delmarva Power & Light Co. v. Federal Energy Regulatory Com.*, 671 F.2d

587, 594 (D.C. Cir. 1982) (*quoting Papago Tribal Utility Authority v. FERC,* 628 F.2d 235, 240

(D.C. Cir. 1980).

Moreover, should the Court decide to proceed with the case in full before the D.C Circuit

rules on *Climate United* and *Vera Institute of Justice,* it is likely that a decision in one of those

cases will come before a decision in this case.  Therefore, at least one of the parties will need to

amend their summary judgment papers to explain the applicability of those decisions to this case.

Thus, similar to what would occur if the Court splits the policy or practice claims from the other

claims, ordering the parties to proceed with all claims would likewise require piecemeal briefing.

A stay will cause no countervailing injustice.  As explained previously, Plaintiffs brought

this lawsuit to restore their grant funding and Plaintiffs have continued to receive their grant

---

[5]    To be sure, Plaintiffs' policy or practice claim has been a moving target.  At times they have characterized it based on an allegation that the Department "awarded grants without individualized review but rather based on vague allegations that the projects were not aligned with the President's newly stated goals of eliminating funding for DEI and climate initiatives—without any effort to determine whether the projects could be brought into line." See e.g., Am. Compl. ¶¶ 132.  Above they claim it is based on a policy "to terminate [DEI and climate-related] grants en masse."  At other times they suggest it is based on the Secretary's memorandum. See Notice of Factual Dev. at 1-2 (ECF No. 58).  But in all cases, Plaintiffs' gripe is that the Department did lots of grant terminations and challenges to grant terminations must be brought in the Court of Federal Claims.

funding since the Court entered its preliminary injunction on August 14, 2025.  Order (ECF No. 29).  In fact, since the Court issued that order, two of the grant agreements have ended under their existing terms.  The performance period for Plaintiff Institute for Agriculture and Trade Policy's grant ended on September 29, 2025 and the Department has paid all funding to Providence Farm Collective Corp., thus ending the grant.  Letter to Bainbridge (ECF No. 55-6 at 7).  In other words, the preliminary injunction has had the effect of mooting two of the five remaining Plaintiffs' claims.  Plaintiffs may argue to this Court that a stay will cause them prejudice, but Plaintiffs actions suggest otherwise.  Plaintiffs have sought to preserve the preliminary injunction by moving to stay proceedings in the D.C. Circuit.  As Plaintiffs likely recognized when they sought a stay of briefing on the preliminary injunction in the D.C. Circuit, the status quo is a favorable posture for them.  From Plaintiff's vantage point, the outcome of further proceedings in this Court, the D.C. Circuit, or the Court of Federal Claims will, at best, continue to preserve the status quo, and, at worst, allow the Government to terminate Plaintiffs' grants as originally planned.

Finally, a stay is not expected to last long because the D.C. Circuit ruling in *Climate United* should be forthcoming.  In an opinion issued on September 2, 2025 the D.C. Circuit concluded that "the grantees are not likely to succeed on the merits because their claims are essentially contractual, and therefore jurisdiction lies exclusively in the Court of Federal Claims." *Climate United*, 154 F.4th at 817.  The plaintiffs petitioned for a rehearing en banc which the Court granted on December 17, 2025.  PER CURIAM ORDER, En Banc, [2150924].  The en banc panel held oral argument on February 24, 2026 and ordered supplemental briefing, which concluded on March 26, 2026.  The only remaining step in the process is for the en banc panel to issue a ruling which will likely occur, at the very latest, when the D.C. Circuit's current term ends on September 30, 2026.

**B.** **Plaintiffs' Notice of Factual Development Does Not Demonstrate Proof of Gaps in the Administrative Record.**

Plaintiffs filed a Notice of Factual Development, See ECF No. 58, noting that the Department terminated the remaining grants in the "Increasing Land, Capital, and Market Access Program" in late March 2026 and that on December 31, 2025, the Secretary issued a new memorandum regarding "General Terms and Conditions for Grants, Cooperative Agreements, and Similar Arrangements." Sec. Memo No. 1078-021. But these are all actions that occurred after the Department made the decision to terminate Plaintiff's grants and thus do not belong in the administrative record. "[I]t is black-letter administrative law that in an APA case, a reviewing court 'should have before it neither more nor less information than did the agency when it made its decision.'" *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013) (*quoting Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). The records that Plaintiffs describe in their notice of factual development would not have been before the Department when it made any decisions affecting Plaintiffs' grants because, at the time, those records did not exist.

Additionally, Plaintiffs' arguments that the administrative record should include records generated post hoc highlights the absurdity of their policy or practice claim. The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent[,] or denial thereof, or failure to act." 5 U.S.C. § 551(13). In limiting APA review to "final" agency action, Congress restricted "pervasive oversight by federal courts over the manner . . . of agency compliance with . . . congressional directives," which would "inject[] the judge into day-to-day agency management." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 67 (2004). But in seeking records regarding the Department's grant terminations that are both unrelated to Plaintiffs' grant terminations occurred months after Plaintiffs' grant terminations, that

is precisely the type of claim into which Plaintiffs attempt to transform their policy claim.

Accordingly, nothing in Plaintiff's Notice of Factual Developments warrants granting Plaintiffs'

motion to supplement the administrative record.

Dated: May 15, 2026                  Respectfully submitted,

<table>
<tr><td>

/s/ David S. Muraskin<br>
David S. Muraskin (DC Bar No. 1012451)<br>
FarmSTAND<br>
712 H Street NE<br>
Suite 2534<br>
Washington, DC 20002<br>
(202) 595-8816<br>
david@farmstand.org

</td><td>

JEANINE FERRIS PIRRO<br>
United States Attorney<br><br>

<i>/s/ John J. Bardo</i><br>
John J. Bardo, DC Bar #1655534<br>
Assistant United States Attorney<br>
601 D Street, NW<br>
Washington, DC 20530<br>
(202) 252-2539<br><br>

<i>Counsel for Defendants</i>

</td></tr>
</table>

Carrie Apfel (DC Bar No. 974342)
Earthjustice
1001 G Street, NW, Suite 1000
Washington, DC  20001
(202) 667-4500
capfel@earthjustice.org

Scott W. Carlson (pro hac vice)
Benjamin E. Apple (pro hac vice)
Farmers Justice Center
6 Fifth Street West
Suite 650
St. Paul, MN 55102
(651) 204-1664
scott.carlson@farmersjustice.org
ben.apple@farmersjustice.org

*Counsel for Plaintiffs*