UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| URBAN SUSTAINABILITY DIRECTORS NETWORK, et al.,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>BROOKE ROLLINS, Secretary of Agriculture, et al.,<br><br>　　　Defendants. | Civil Action No. 25-1775 (BAH) |

## JOINT STATUS REPORT

Pursuant to the Court's May 29, 2026 Order and Memorandum Opinion granting in part Plaintiffs' Motion to Supplement the Administrative Record, Dkt. Nos. 71, 72, the parties respectfully submit this joint status report to provide a "proposed schedule for prompt supplementation of the administrative record, and for provision of the privilege log and responses to the interrogatories and requests for production."

**Plaintiffs' Statement**

Plaintiffs propose the following schedule for "prompt" supplementation of the record and for discovery:

- June 12, 2026 – Defendants supplement the record as directed in this Court's Memorandum Opinion, Dkt. No. 72;

- June 12, 2026 – Defendants produce a privilege log, as ordered by the Court, Dkt. No. 71;

- June 19, 2026 – Defendants respond to the two interrogatories and two requests for production of documents, as ordered by the Court, Dkt. No. 71.

As this Court is aware, supplementation of the Agency Record is long overdue. This proposed schedule is eminently reasonable given that these documents should have been provided more than eight months ago, in September 2025, the deadline by which Defendants were first required to produce the Administrative Record. *See*, *e.g.*, Mem. Op. 9, Dkt. No. 72. Defendants have thus been on notice for over eight months that Plaintiffs requested—and this Court expected—these documents to be part of the Administrative Record. *Id.* at 8. ("[D]efendants gave assurance at the motions hearing that the administrative record would include what plaintiffs have requested in their discovery motion, as well as materials reflecting 'the process' defendants took when evaluating the grants at issue" (quoting *Urb. Sustainability Dirs. Network v. U.S. Dep't of Agric.*, No. 25-cv-1775 (BAH), 2025 WL 2374528, at *40 (D.D.C. Aug. 14, 2025)). Thus, any argument that identification and production of such records is overly burdensome or time-consuming should not provide a basis to further delay Defendants' compliance with its long overdue commitments and obligations.[1] Defendants' contrary proposal for a rolling production of both the supplemental record and discovery responses that spans six months—coming after over eight months of delay and in response to this Court's request for "prompt supplementation—is facially unreasonable.

---

[1] Notably, Defendants' counsel represented to Plaintiffs' counsel that pursuant to the Justice Manual, USDA—not its counsel—is responsible for compiling the Administrative Record and responding to discovery. Thus, any contention that because "the same attorneys who would be working on this discovery process are working on the analysis and response related to Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 62) and Motion for Preliminary Injunction (ECF No. 63)" and that therefore, the productions should not occur while the briefing is ongoing, is a red herring.

It appears Defendants intend to argue for prolonged, additional time so that they can locate documents that imply there was no policy, but rather individualized review. That effort to clutter the record should not be countenanced and certainly should not further delay this litigation. This Court has already concluded that based on the documents produced Plaintiffs "have reasonable, non-speculative grounds to believe" the requested documents "were considered in relation to Defendants' policy to terminate DEI and climate-related awards." Mem. Op. 17, Dkt. No. 72. For example, this Court pointed to agency-wide directives related to identifying grants by search terms. *See id*. at 17-19. Thus, Defendants' claim that they have to review the individual terminations of over 900 grants not only mischaracterizes the nature of the record ordered by the Court, but it is also just another attempt to deny the reality of what has already been shown.[2]

Moreover, Defendants' request to defer their discovery obligations until after the Court rules on the pending Motion for Leave to Amend continues to misunderstand or misrepresent the nature of Plaintiffs' claims.[3] As Plaintiffs and this Court repeatedly have made clear—and as the Court reiterated again in its Order requiring discovery—

> "[P]laintiffs are challenging the implementation of an alleged policy, derived from the Secretary's March 13, 2025 memoranda, and resulting in defendants' actions to terminate, from about March to July 2025, possibly

---

[2] Plaintiffs' counsel received Defendants' proposed schedule for supplementing the Administrative Record and responding to discovery at 1:26pm EST on the day this filing is due, despite Plaintiffs' counsel's unsuccessful efforts to discuss this and get Defendants' position on June 1, June 3, June 4, and this morning. Given the late hour at which we received Defendants' proposed schedule, we do not have time to engage in an extended back-and-forth discussion on their interpretation of the Court's production Order.

[3] Plaintiffs note that it once again is put in a position of having to respond to what is essentially a request for a stay or further delay in complying with a court-ordered deadline in a joint status report rather than through motions practice. To the extent Defendants seek to stay their discovery obligations—or any other future efforts to stay or otherwise delay this litigation—it should be required do so through filing a motion, rather than trying to curtail Plaintiffs' opportunity to fully respond by including it in a joint status report.

> hundreds of grant awards that were fulfilling the objectives of the grant and statutory authorizations under which the grants were awarded and were in compliance with the terms or conditions of the awards, but terminations were nonetheless abruptly made due to a change in agency priorities for which no reasoned explanation was communicated to grant recipients, who also were not offered technical assistance or an opportunity to address any alleged problems prior to termination" and [] "[t]his is indeed a reviewable agency action and thus should be conducive to the production of a fulsome administrative record."

Mem. Op. 8-9, Dkt. No. 72 (quoting *Urb. Sustainability*, 2025 WL 2374528, at *40 n.19). The documents requested to supplement the Administrative Record and those requested through discovery relate to the challenged policy at issue in this case *regardless of the Court's ruling on the Motion for Leave to Amend*, and thus any request to defer discovery responses until after a ruling on that motion is yet another attempt "to limit the administrative record . . . to defeat claims simply by declining to produce records that may help establish the veracity of the underlying factual allegations," *id.* at 2, and it should not be condoned by the Court.

**Defendants' Statement**

Pursuant to the Court's May 29, 2026 Order (ECF No. 71) Defendants respectfully propose the following schedule to supplement the Administrative Record and respond to discovery.

As an initial matter, the same attorneys who would be working on this discovery process are working on the analysis and response related to Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 62) and Motion for Preliminary Injunction (ECF No. 63). Although DOJ counsel is writing the brief, USDA counsel will assist with providing background information. In light of the significant discovery burden, USDA would request that the deadlines do not begin to run until after it has completed briefing on the pending motions.

In submitting this discovery plan, Defendants are not waiving or otherwise prejudicing their arguments regarding Tucker Act jurisdiction or the scope of relief available to Plaintiff, or that the scope of discovery is overly broad. The schedule that Plaintiffs propose is not practical

4

and fails to account for the many competing demands on USDA staff's responsibilities.  USDA proposes a rolling schedule to comply with the Court's order. To be clear, the deadlines proposed below are concurrent.  In other words, all documents will be produced within six months.

**Discovery Requests**

1.    The first interrogatory seeks a "description of the process by which Defendants identified and decided to terminate or did terminate Plaintiffs' Grants and any other grants."  The interrogatory requires USDA to provide for each such grant, among other information, an explanation of the creation of the newly articulated priorities, how the grant was assessed for compliance with the new priorities, and "any other analyses of whether and when to terminate all identified grants."

   a.    USDA would require at least **six months** to gather the necessary records, review them for content and privileges, answer the interrogatory as to each respective grant, prepare any privilege logs, and produce the records in accordance with the associated request for production of documents.  USDA could provide documents on a rolling basis.  Some documents could be produced on a more rapid timeline, such as termination letters (as described below).  It is the recreation of the review process for each individual award that would take significant time and would be actually relevant to plaintiffs' claim.

   b.    Contrary to Plaintiffs' assertion in their Motion for Expedited Discovery, USDA did not use a "single, centralized process" to execute all grant terminations.  To respond to this interrogatory, USDA would need to pull records on the evaluation process for each of the 948 awards.[4]  USDA would need to evaluate the basis for the termination from

---

[4] USDA estimates it has terminated 948 awards since January 20, 2025, based on information reported by awarding agencies and staff offices to the Office of the Chief Financial Officer (OCFO).  The total does not include awards where the notice of termination was subsequently

the termination letter, identify the deciding official and any records in their possession regarding the termination decision, locate recommendation communications made to the deciding officials, identify who drafted and reviewed those recommendations, and locate records related to their evaluation process (including all instructions issued to them).  Many of those officials likely consulted with colleagues, program offices, counsel, senior officials, and others in evaluating individual awards for termination, all of which would constitute "analyses of whether and when to terminate all identified grants."  USDA believes hundreds of employees participated in the review and evaluation processes and may have responsive documents that need to be collected and reviewed.

2.      The second interrogatory seeks a list of grant recipients, and their grants impacted by those terminations, who received termination notices "containing language similar or equivalent to the termination letters received by Plaintiffs."  As USDA used templates that cited to 2 CFR § 200.340 and provisions of 2 CFR § Part 200 that address uniform termination and closeout procedures, this is likely to include substantially all of USDA's terminations.  USDA would require **two weeks** to gather all termination notices, which are maintained separately by the awarding agencies and staff offices.

3.      The first request for production seeks "all documents regarding the creation, development, and execution of Defendants' policy, practice, or process of terminating grants."

---

withdrawn or the award was otherwise reinstated.  The total may, however, include terminations due to noncompliance, terminations by mutual agreement, or recipient-requested terminations, none of which would be subject to the court's order and for which documentation will not be produced.  As USDA gathers more up-to-date reports from awarding agencies and staff offices, the final tally may vary.

a. This request appears to broadly request all documents — including privileged documents — related to several Secretary's Memorandums that required the evaluation and termination of awards and records regarding the process for evaluation and termination (which was continuously refined over time). Because each of the Department's twenty-one awarding agencies and staff offices was responsible for ensuring its own compliance with Secretary's Memorandums and Departmental policies associated with awards, they would all have instituted their own policies and procedures for evaluating and terminating awards.

b. USDA would require **six months** to identify relevant policies, trace processes for their development, identify record owners, and conduct searches and review of those records.

4. The second request for production seeks all records relied on in answering the interrogatories. That time is included in paragraphs 1 and 2 above.

**Supplementing the Administrative Record**

1. The first category of documents seeks "documents reflecting the directions USDA received to implement the Administration's anti-DEI and climate-related policies." However, the scope of the memorandum opinion is unclear.

a. If this relates solely to plaintiffs' grants, USDA would likely require at least **2 months** to identify all relevant records responsive to this request. USDA would conduct a more exacting trace of each communication from any original requirement, as communicated down to the relevant employees who conducted the evaluations, as well as for antecedent e-mails.

7

b.   The Memorandum Opinion specifically notes Count 3 and Count 4 of the First Amended Complaint and suggests the scope is may be all terminations.  Because there would be significant additional material were that the case, providing this information would require at least **six months** as described above.

2.   The second category of documents seeks "any instructions given on how to complete the spreadsheets for grants with DEI and climate-related search terms."

a.   The Memorandum Opinion requires USDA to produce "preparatory documents relating to the spreadsheets, personal notes memorializing calls discussing the spreadsheets, and the spreadsheets, without redaction and reflecting all data entered." USDA would require **one month** to identify "preparatory documents" relating to the call.

b.   USDA would require at least **two months** to obtain and review "personal notes memorializing calls discussing the spreadsheets," if this refers only to OCFO calls. USDA would first have to identify who participated in those calls, then have them search for personal notes that may have existed.  There may be tens to hundreds of potential participants who may have personal notes.

c.   USDA could produce the spreadsheets within **one week**.  But USDA respectfully maintains its objection to producing privileged material.

d.   To the extent that the Court requires USDA to produce all other documents related to instructions, written communications, or conversations within the agencies related to the process for completing the spreadsheet and official review, that would require at least **six months** to produce.  As reviews were carried out by potentially hundreds of employees throughout the department, USDA would need to trace the path of

instructions provided to these employees. USDA would also need to inquire about which employees and offices they may have consulted with as they completed the spreadsheets, such as senior officials, OCFO, counsel, and colleagues.

3.      The third category of documents seeks "records showing what terminations decisions were made by agency leadership and what criteria they used." The memorandum opinion requires USDA to produce "the termination letters for other grants." As stated above, USDA would require **two weeks** to gather all termination notices, which are maintained separately by the awarding agencies. Records documenting agency leadership's decisionmaking on all awards would take at least **six months** to produce, as described above.

The fourth category of documents seeks "all documents related to the termination of plaintiffs' grants." USDA agrees to conduct a more thorough trace of all relevant communications and processes related to the Plaintiffs' grants. However, USDA would require **three months** to conduct this evaluation. Based on the clarifications and instructions in the Memorandum Opinion, this request appears to overlap with many of the requests identified above. For example, USDA still needs to retrace the development of various policy documents, instructions, and templates; identify agency participants in any OCFO calls and collect personal notes; identify agency level review procedures and policies; and more. USDA would also need to prepare a privilege log, which will add additional time to the discovery process.

Finally, Plaintiffs claim that Defendants are proposing to "clutter" the administrative record. If Plaintiffs believe that Defendants are proposing to provide more information than Plaintiffs require then Defendants are more than happy to hear proposals from Plaintiff about how the scope of discovery can be narrowed.

Dated: June 5, 2026

Respectfully submitted,

/s/ Carrie Apfel                                        JEANINE FERRIS PIRRO
Carrie Apfel (DC Bar No. 974342)                       United States Attorney
Earthjustice
1001 G Street, NW, Suite 1000                          /s/ John J. Bardo
Washington, DC  20001                                  John J. Bardo, DC Bar #1655534
(202) 667-4500                                         Assistant United States Attorney
capfel@earthjustice.org                                601 D Street, NW
                                                       Washington, DC 20530
                                                       (202) 252-2539

Holly Bainbridge (*pro hac vice*)
David S. Muraskin (DC Bar No. 1012451)                 *Counsel for Defendants*
FarmSTAND
712 H Street NE
Suite 2534
Washington, DC 20002
(202) 595-8816
holly@farmstand.org
david@farmstand.org


Scott W. Carlson (pro hac vice)
Benjamin E. Apple (pro hac vice)
Farmers Justice Center
6 Fifth Street West
Suite 650
St. Paul, MN 55102
(651) 204-1664
scott.carlson@farmersjustice.org
ben.apple@farmersjustice.org

*Counsel for Plaintiffs*