UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| URBAN SUSTAINABILITY DIRECTORS NETWORK et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BROOKE ROLLINS, Secretary of Agriculture et al.,<br><br>Defendants. | Civil Action No. 25-1775 (BAH) |

**DEFNEDANTS' REPLY IN FURTHER SUPPORT**
**OF THEIR PARTIAL MOTION TO DISMISS**

Defendants, the Secretary of Agriculture and other officials and agencies in the Department of Agriculture sued in their official capacities, respectfully submit this reply in further support of their partial motion to dismiss (ECF No. 93).

## INTRODUCTION

The arguments that Plaintiffs advance against dismissal are not persuasive. See Pls. Opp' to Dismiss ("Opp'n") (ECF No. 105). First, Plaintiffs Agroecology Commons ("Agroecology") and Providence Farm Collective Corps ("Providence") have fully spent their National Institute of Food and Agriculture ("NIFA") grants, and the performance period for Institute for Agriculture and Trade Policy's ("IATP") grant has ended. Even if they prevail, there is no relief that the Court can provide to them, and thus their claims are moot. Second, Plaintiffs' policy claim is based on a collection of independent agency actions that they label as a "policy," not a discrete agency action, and thus this claim should be dismissed. Third, because the authorizing statute for the Increasing Land, Capital, and Market Access Program ("ILA Program") grants did not require any

consideration of race or other protected status in awarding funds, Plaintiffs' claims that ILA Program grant terminations were contrary to law should be dismissed. Finally, because Plaintiffs do not plead the elements of a due process, separation of powers, or ultra vires claim, those claims should be dismissed.

## ARGUMENT

### I. Plaintiffs' Agroecology, Providence Farm, and IATP's Claims are Moot.

As Defendants explained in their motion, Plaintiffs Providence and Agroecology fully spent their NIFA grant funds and the performance period for IATP's grant has ended. Plaintiffs seek an Order to "return things to the status quo ante in relation to Plaintiffs' awards" and to "permanently enjoin Defendants from giving effect to or maintaining award terminations of Plaintiffs' awards." Sec. Am. Comp., ECF No. 83 at 84. But the status quo ante cannot be restored when the grant funds are fully spent or the performance period has ended pursuant to the grant's own terms; the awards are finished and can no longer be terminated. The fact that the awards are fully spent or expired alone renders Plaintiffs' claims moot. Def Mot. at 7. Neither Providence Farm nor Agroecology[1] deny that they have fully spent their grants and IATP does not deny that its grant has ended. See generally Opp'n. Instead, these Plaintiffs attempt to manufacture a live controversy by advancing several creative arguments, each of which the Court should reject.

First, Agroecology, Providence, and IATP argue their claims are live because they continue to seek declaratory relief to remedy reputational harm. Opp'n at 13. These plaintiffs, in other

---

1 Defendants acknowledge that Agroecology had grants under both Regional Food Systems Partnerships Program and the ILA Program. Because Agroecology has only fully spent its Regional Food Systems grant, Defendants only argue that Agroecology's claims stemming from its Regional Food Systems grant are moot. *See* Agroecology USA Spending Screenshot (ECF No. 93-3). In other words, a ruling in Defendants' favor on the mootness arguments would allow Agroecology to remain a plaintiff in this lawsuit, but Agroecology's claims would only be based on its ILA grant.

words, seek only a declaratory ruling from the Court that the terminations were unlawful. But "the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful,' unless an exception to mootness applies." *J. T. v. Dist. Of Columbia*, 983 F.3d 516, 522 (D.C. Cir. 2020) (*quoting, City of Houston v. Dep't of Housing and Urban Dev.,* 24 F.3d 1421, 1429, (D.C. Cir. 1994)). A plaintiff seeking a declaratory judgment "must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011). The key question is whether Defendants are "actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights." *Id.* A ruling that Agroecology, Providence, and IATP's grants were unlawfully terminated would not alter Defendants' future conduct because Defendants cannot terminate grants that have been fully spent or have ended. Providence Farm, Agroecology, and IATP all but concede that an injunction permanently reinstating their grants would not have any effect on their operations. See Opp'n at 13. Courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). At this point, an order declaring that the terminations of Agroecology, Providence, and IATP's grants were unlawful would "amount[] to exactly the type of advisory opinion Article III prohibits." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008).

Agroecology, Providence and IATP's claims of reputational harm from the statements in the termination letters do not create an ongoing controversy. Opp'n at 14. As the D.C. Circuit explained, "where harm to reputation arises as a byproduct of government action, the reputational injury, without more, will not satisfy Article III standing when that government action itself no longer presents an ongoing controversy." *Foretich v. United States*, 351 F.3d 1198, 1212-13 (D.C. Cir. 2003). This contrasts with situations involving "reputational injury" that "derives directly

from government action" which "will support Article III standing to challenge that action." *Id*. at 1214. *Foretich* involved a constitutional challenge to the Elizabeth Morgan Act as an unconstitutional bill of attainer. *Id.* at 1203. The *Foretich* plaintiff was in a child custody dispute with his former wife in the Superior Court for the District of Columbia and the Superior Court had granted the plaintiff broad visitation rights to his daughter even though the plaintiff's former wife claimed that the plaintiff had sexually abused their daughter. *Id.* Following "extraordinary publicity" of the custody dispute, Congress enacted legislation through the Elizabeth Morgan Act severely restricting the plaintiff's visitation rights. *Id.* at 1207. When the case reached the D.C. Circuit, the plaintiff's daughter had turned eighteen mooting any visitation rights that the plaintiff could have had. *Id*. at 1209. Despite finding that "[w]hen a government entity abrogates an individual's parental rights on the basis of a judgment that the person is unfit as a parent, the official abrogation undoubtedly damages that person's reputation and standing in the community[,]" the D.C Circuit found that the plaintiff's claims for reputational harm were not redressable insofar as they affected his visitation rights because even if the Act were held unconstitutional "D.C. law would still preclude [the plaintiff] from obtaining or enforcing any visitation orders in Superior Court in light of [his daughter's] age. Accordingly, this component of [the plaintiff's] reputational injury is merely the secondary effect of an injury that is otherwise moot." *Id*. at 1212.

Here, the challenged government action is the grant terminations, and the relevant grant agreements have ended due to exhaustion of funds or expiration. Thus, it is impossible for the Department to terminate the grants again, just as the *Foretich* plaintiff's daughter reaching adulthood made it impossible for the government to hinder the plaintiff's visitation rights. Because any reputational harm from the grant terminations is a mere byproduct of the terminations, they do

not present a live controversy. To present a live controversy, Agroecology, Providence, and IATP would need to have challenged "an unexpired and unretracted government action." *Foretich*, 351 F.3d at 1213; *see also McBryde v. Judicial Conf. of the United States*, 264 F.3d 52, 55 (D.C. Cir. 2001) (judge's challenge to his suspension and disqualification were moot because they had expired). Agroecology, Providence, and IATP spent the grant money or completed and closed out their award before the government could take any further action on the grants. Thus the government action that they challenge has expired. *See Foretich,* 351 F.3d at 1213.

Moreover, these Plaintiffs' claims of reputational harm appear to be newly invented to avoid dismissal because Agroecology, Providence, and IATP fail to present any facts justifying their claims of reputational harm in support of their opposition beyond conclusory, self-serving declarations. Declarant Leah Atwood merely asserts that the termination "harm[s] the reputation of Agroecology Commons as an organization" without providing any basis for that assertion. ECF No. 105-1, ¶9. The declaration of Erin McKee VanSlooten is similarly devoid of any basis for asserting that the termination letter was "harmful to the reputation of IATP as an organization." ECF No. 105-3, ¶10. Prior declarations fare no better. See Decl. of Kristin Heltman-Weiss, (ECF No. 14-5, ¶ 24) (asserting "significant reputational harm" without explaining the basis for that conclusion, and asserting statements had merely the "potential to harm the reputation of PFC" while citing a press release that spoke in broad terms and did not explicitly mention the organization or its award); Decl. of Leah Atwood, (ECF No. 14-4), ¶28 (asserting having "suffered reputational harm" solely on the basis that some beginning farmers hold them responsible for providing them with "resources and education," but not asserting any discrete impacts on their reputation).

Agroecology, Providence, and IATP next argue that their claims are not moot because prevailing on the policy claim will prevent any future grants that they obtain from the Department from being unlawfully terminated. Opp'n at 14. But the Supreme Court has rejected "past-is-prologue" standing. Specifically, in *City of Los Angeles* v. *Lyons,* 461 U.S. 95, 101-11 (1993), the Supreme Court held that a plaintiff previously subjected to a chokehold by the Los Angeles Police Department lacked standing to enjoin future chokeholds absent a concrete, imminent threat that he personally would be choked again; a past incident and an alleged departmental policy or practice were not enough.

Here, the Plaintiffs' standing theory is a redux of *Lyons*. Agroecology, Providence, and IATP claim they will apply for more grants in the future, but there is no guarantee that the Department will award them grants in the future, let alone that the Department will award them grants and then terminate those grants. As in *Lyons*, these Plaintiffs cannot show standing because they have no basis beyond mere speculation to believe that they will be subjected to the allegedly unlawful terminations again. "Absent a sufficient likelihood that [they] will again be wronged in a similar way," Plaintiffs are "no more entitled to an injunction than any other citizen []; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain" agency practices are unlawful. *Lyons*, 461 U.S. at 111; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) (holding that an "injury in fact must also be 'concrete,'" which "must be 'de facto'; that is, it must actually exist."); *Loc. No. 8-6, Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Missouri,* 361 U.S. 363, 368 (1960) (challenge to a discretionary state seizure of gas company due to labor strike held moot once the seizure ended, notwithstanding the "continuing threat of seizures in future labor disputes"). Without concrete evidence that the Department will award them grants in the future and then unlawfully terminate those grants, Plaintiffs claims are

based on "subjective apprehensions," not the "reality of the threat of repeated injury," that is necessary to establish standing. *Lyons*, 461 U.S. at 107.

Finally, to the extent that Agroecology, Providence, and IATP are pressing forward with their claims to avoid undermining the policy claim, see Opp'n at 15-16 (referencing "other Plaintiffs' claims"), the Court should disregard these concerns. Although, as explained in part II below, Defendants maintain that Plaintiffs' policy claim should be dismissed, the Court need not agree with Defendants' arguments on the policy claim to find that Agroecology, Providence, and IATP's claims are moot. The Court can dismiss Providence and IATP's claims and one of Agroecology's claims from the lawsuit but still allow Agroecology and the twenty-four remaining plaintiffs to press forward with their claims, including their policy claim. Because Agroecology, Providence, and IATP do not have active grants that can be restored, there is no relief that the Court can provide.

## II. <u>Plaintiffs Policy Claim is Not a Viable APA Claim.</u>

Plaintiffs group hundreds of discrete agency actions, label those actions as a "policy," and seek to challenge that so-called "policy" under the Administrative Procedure Act. Am. Compl. ¶¶ 251-56. (ECF No. 83). But as Defendants explained, see Def Mot. at 11-16 (ECF No. 93), this is not a valid APA claim. Plaintiffs rely on a *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 890 n.2 (1990), to argue that if there is a specific order "applying some particular measure across the board to all . . . terminations" then the order or regulation can be challenged under the APA. Opp'n at 17 (*quoting Nat'l Wildlife Fed'n*, 497 U.S. at 890 n.2). But Plaintiffs have not identified "some specific order or regulation, applying some particular measure across the board to all individual [] terminations" that they are challenging. *Nat'l Wildlife Fed'n*, 497 U.S. at 890 n.2. Instead, Plaintiffs are challenging a pattern of agency conduct which is outside the definition of an "agency

action" under the APA. 5 U.S.C. § 551(13) (defining "agency action"). Plaintiffs are challenging terminations of grants awarded under multiple Department programs, including but not limited to, the Urban and Community Forestry Assistance Program, 2d. Am. Compl. ¶ 14, the Beginning Farmer and Rancher Development Program, *id.* ¶ 16, the Regional Food Systems Partnerships Program, *id.* ¶ 17, the Community Food Projects Competitive Grants Program, *id.* ¶ 15, and the ILA Program. *Id.* ¶¶ 15, 19-41. They identify no "specific order or regulation" that was applied "across the board" to all grant terminations. *Nat'l Wildlife Fed'n*, 497 U.S. at 890 n.2.

This defect in Plaintiffs' policy claim is in stark contrast to the cases that they cite as examples of similar cases that courts have permitted to move forward. Unlike in this case, the complaint in *Illinois v. Vought* does not allege that the defendants have an unlawful policy or practice of grant terminations. See Dkt. *Illinois v. Vought*, Civ. A. No. 26-1566 (N.D. Ill.), Am. Compl. (ECF No. 51). Instead, the plaintiffs in *Vought* were four states that challenged an alleged unwritten "targeting directive" from the Office of Management and Budget ("OMB") that allegedly commanded "agencies to cut, freeze, or otherwise withhold funding to the four Plaintiff States here." *Id.* ¶ 2. If anything, the Court's opinion on the preliminary injunction in *Vought* supports Defendants' position. In *Vought,* there was no "formal, official memo in the record announcing a federal government decision to bring [the States] to heel or otherwise punish them by withholding money committed to those states by our national government." *Illinois v. Vought*, 825 F. Supp. 3d 721, 726 (N.D. Ill. 2026). And the Court was not convinced that the Plaintiffs could challenge a broad "targeting directive" finding that the alleged "targeting directive" "amounts to a description of the federal government's hostility to certain states and its effort to undermine the basic functions of those states' governments. The breadth of the term is akin to a programmatic challenge that is not subject to review under the Administrative Procedure Act." *Id.*

at 728. The Court was only convinced that Plaintiff's challenge to OMB's "directive to [the Department of Health and Human Services] to target plaintiffs for funding cuts is likely a final agency action[.]" *Id.*

Here, Plaintiffs are not challenging a specific directive that the Court can review to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," rather they are challenging an alleged "policy mandating grant terminations *en masse*" across multiple components of the Department of Agriculture because the grants do not align with current Department priorities. 2d Am. Compl. ¶¶ 1, 6, 223, 254 (ECF No. 83). A challenge to multiple grant terminations awarded by multiple components under multiple programs based on "Department priorities" is a challenge to an amorphous concept akin to a challenge that alleges a "plan to target Illinois, California, Colorado, and Minnesota for funding cuts or suspensions" which "does not provide the particularity required for an enforceable injunction." *Vought,* 825 F. Supp. 3d at 726.[2]

The policy claim in *Association of American Universities v. Department of Defense*, 806 F. Supp. 3d 79 (D. Mass. 2025), is even less like the challenge that Plaintiffs bring here. That case involved a challenge to a "Rate Cap Policy" that limited grant funding to universities insofar as the funding was used for "indirect costs." *Id.* at 89. The policy was enshrined in two memoranda, one that "laid out a plan" and another that "outlined its implementation." *Id.* at 96. In other words, unlike the Plaintiffs here who challenge an alleged pattern of agency conduct, the *Association of*

[2] Although the *Vought* Court permitted limited discovery, unlike this Court, the *Vought* Court did not order the Government to produce records regarding decisions to terminate funding to entities other than the Plaintiffs themselves. See, Dkt. *Vought*, Civ. A. No. 26-1566, Order (ECF No. 50). In fact, the Court found it could not review "grant-by-grant, award-by-award terminations" because such claims were barred by the Tucker Act. *Vought,* 825 F. Supp. 3d at 729.

*American Universities* plaintiffs challenged a written policy with specifically defined contours laid out in two memoranda that a Court could review to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a).

Because the APA only permits challenges to "agency action" which is limited to "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act" and does not include patterns of conduct, 5 U.S.C. § 551(13), the Court should dismiss Plaintiffs' policy claim.

## III. **The ILA Grant Terminations Were Not Contrary to Law.**

As Defendants explained, in enacting the Inflation Reduction Act, Congress amended the authorization for the ILA Program to eliminate a potential beneficiary's membership in a protected class as a required consideration for eligibility. Def Mot. at 16-17 (ECF No. 93). Plaintiffs argue that by including the term "underserved," Congress sought to preserve membership in a protected class as a consideration. Opp'n at 20. Plaintiffs are incorrect. Congress has not defined the term "underserved" for purposes of the ILA Program, nor has it required that it include consideration of race or gender. The term should be afforded its ordinary meaning, *HollyFrontier Cheyenne Ref., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 388 (2021) (*quoting FDIC v. Meyer,* 510 U.S. 471, 476 (1994)) ("Where Congress does not furnish a definition of its own, we generally seek to afford a statutory term 'its ordinary or natural meaning.'"), and the ordinary meaning does not require consideration of race or gender. See Underserved, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/underserved (last visited Aug. 22, 2025) ("provided with inadequate service"). At the very least, the Inflation Reduction Act provides a frame of reference for understanding the term that does not require consideration of race or gender ("veterans, limited resource producers, beginning farmers and ranchers, and farmers, ranchers, and

forest landowners living in high poverty areas"). Inflation Reduction Act (IRA), Pub. L. 117-169, § 22007.

Plaintiffs' citations to other portions of Section 22007 of the Inflation Reduction Act that reference equity commissions to "address racial equity issues" and financial assistance to farmers "determined to have experienced discrimination," Opp'n at 21 (quoting IRA § 22007 (c), (e)) only bolster Defendants' point. In enacting Section 22007 of the Inflation Reduction Act, which created the current version of the ILA Program, Congress knew how to create programs that consider an individual's race as part of eligibility. Specifically, Section 22007(e) created the Discrimination Financial Assistance Program which provided for "financial assistance, including the cost of any financial assistance, to farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021, in Department of Agriculture farm lending programs[.]." In contrast, Section 22007(b), which created the current version of the ILA program, does not reference past discrimination as a condition of eligibility. The ILA Program and the Discrimination Financial Assistance Program are separate programs with separate eligibility criteria. The ILA Program was created from a $250,000,000 appropriation that assists "underserved farmers, ranchers, or forest landowners, including veterans, limited resource producers, beginning farmers and ranchers, and farmers, ranchers, and forest landowners living in high poverty areas," IRA § 22007(b), whereas the Discrimination Financial Assistance Program was created from a separate $2,200,000,000 appropriation that assists "farmers, ranchers, or forest landowners determined to have experienced discrimination prior to January 1, 2021." IRA § 22007(e).

Even if Plaintiffs are correct that the scope of the term "underserved" could include considerations of race and gender, nothing in the statute mandates such consideration. In fact,

mandating consideration of race would raise serious constitutional concerns. *See Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll., 600 U.S. 181 (2023)* ("the Equal Protection Clause . . . applies without regard to any differences of race, of color, or of nationality it is universal in its application. The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color.") (cleaned up); Memorandum Opinion for the General Counsel, Department of Agriculture, "Department of Agriculture Preferences for 'Socially Disadvantaged' Groups", 50 Op. O.L.C. ___ (June 22, 2026), available at https://www.justice.gov/olc/media/1447016/dl?inline (last visited August 24, 2026). The Department can comply with the statute in making awards on the basis of one of the enumerated classes ("veterans, limited resource producers, beginning farmers and ranchers, and farmers, ranchers, and forest landowners living in high poverty areas") without consideration of an applicant's or a beneficiary's race or gender. The fact that the Department has chosen to interpret the statute to avoid potential constitutional concerns, while still remaining consistent with its express terms, cannot be said to violate the statute.

Because the enabling statute did not require let alone provide for consideration of race or other protected statuses in determining eligibility for assistance under the ILA Program, the Court should dismiss Plaintiffs' claims that the ILA Program grant terminations were contrary to Law.

## IV. Plaintiffs Have Not Pleaded the Elements of a Due Process, Ultra Vires, and Separation of Powers Claim.

Plaintiffs do not challenge the substance of Defendants' due process arguments but instead urge the Court to defer consideration of it while the D.C. Circuit rules on *Vera Institute of Justice. v. Department of Just*ice, appeal docketed, No. 25-5248 (D.C. Cir. July 10, 2025). But as Defendants explained, multiple Courts have rejected due process claims in grant termination cases and determined that a grant funding recipient lacks a constitutionally protected property interest in

continued grant funding. Def. Mot. at 23. Plaintiffs offer no citations in response. Opp'n at 21. Instead, plaintiffs hold out hope that the D.C. Circuit will reverse the district court's ruling in *Vera Institute of Justice v. Department of Justice,* 805 F. Supp. 3d. 12, 35 (D.D.C. 2025), that the plaintiffs "failed to establish even a plausible property interest in the grant awards[.]" But the D.C. Circuit almost certainly will not reverse this decision because doing so would contradict the Supreme Court's holding in *National Endowment for the Arts v. Finley*, 524 U.S. 569 (1998), which Defendants discuss in their opening motion. Def. Mot. at 22. Moreover, the prospect that binding precedent may change later "is a risk inherent in a common-law legal system" and "is an insufficient basis upon which an indefinite stay of the proceedings for enforcement of an order may be grounded." Mem. Op. at 13 (ECF No. 72).

Plaintiffs urge the Court to await evidence produced in discovery to determine whether their ultra vires and separation of powers claims remain viable. But where a claim is inadequately pled, it must be dismissed; "a plaintiff cannot cure flaws in its complaint with a promise of facts at a later stage or in a later brief." *Climate v. Rollins*, Civ. A. No. 25-1760 (CJN), 2026 WL 849933, at *3 (D.D.C. Mar. 27, 2026); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) ("[W]e accept neither 'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint,' nor 'legal conclusions cast in the form of factual allegations.'" (citations omitted)).

Plaintiffs argue that evidence the terminations were directed by the Department of Government Efficiency ("DOGE") may be sufficient to support an ultra vires claim. Opp'n at 23-24. Even if this could be a basis for an ultra vires claim, Plaintiffs have not plausibly alleged in the Complaint that the decisions to terminate grants came from outside of the Department. DOGE is not a separate government agency, rather it is a policy initiative created through Executive Order

14,158, 90 Fed. Reg. 8441 (Jan. 20, 2025). The Executive Order instructed agency heads to "establish within their respective agencies an agency DOGE team of at least four employees, which may include Special Government Employees." *Id.* § 3(c). These agency DOGE teams are employed by and located within the agencies, not the Executive Office of the President. *Id.* These DOGE teams are separate from the U.S. DOGE Service, which is an entity within the Executive Office of the President and on which Plaintiff's ultra vires theory relies. *Id.* § 3(b). Because Plaintiffs have not plausibly alleged that the challenged decisions came from outside the Department, Plaintiff's theory fails.

Finally, Plaintiffs argue they may have a viable separation of powers claim if Defendants refuse to spend the appropriations that fund their grants. Opp'n at 24-25. But Defendants are not refusing to spend appropriated funds; they only seek to spend the funds consistent with the program authorizing statutes and the Department's current priorities. The funds remain available for re-obligation until September 30, 2031. IRA § 22007(b). Therefore, Plaintiffs' separation of powers claim is implausible.

* * *

## CONCLUSION

For these reasons, and the reasons stated in Defendants' opening motion, the Court should grant Defendants' partial motion to dismiss.

Dated: August 25, 2026
Washington, DC

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: *Is/ John J. Bardo*
JOHN J. BARDO, D.C. Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 870-6770

*Attorneys for the United States of America*