UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| URBAN SUSTAINABILITY DIRECTORS NETWORK, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-01775-BAH |

**JOINT STATUS REPORT**

Pursuant to the Court's September 29, 2026 Minute Order, the parties respectfully submit this report identifying the Court's questions in the Minute Order and providing their responses underneath each question.

## I. Plaintiffs Preliminary Statement

Plaintiffs believe their responses to the Court's questions speak for themselves and did not intend to add additional briefing. However, in response to review of "Defendants' Preliminary Statement" below, Plaintiffs note that Defendants indicate that Defendants did not engage in document review for this matter from July 7, 2026, to August 27, 2026. In other words, for a period of more than six (6) weeks, while Defendants were knowingly in violation of this Court's production deadlines, they did not work to make any productions. This is reflected by the facts, detailed below in response to the Court's questions, that for months, Defendants have not taken basic steps to correct the known errors in their existing productions and that, while waiting for the Court's order on the pending motion, Defendants have made a single production of 21 twenty-one (21) documents.

Defendants' claim that they are now have adequate resources and systems to move this case forward is one the Court and Plaintiffs have heard time and again without it resulting in any progress. In fact, Defendants state below that with their new staffing and systems they "have been prioritizing reviewing records for further productions but will immediately begin addressing those concerns." Put another way, in one breadth Defendants state they are prepared to move forward—even though that has not resulted in any meaningful productions—while in another they note that preparation prevents them from even doing two things at once—so they cannot both produce documents and correct errors entirely of Defendants' own creation, which they have sat on for months.

## II. <u>Defendants Preliminary Statement</u>.

### A. USDA Resources Dedicated to the Case.

Defendants currently have considerable resources dedicated to this case. The USDA Office of the General Counsel (OGC) attorney previously leading this case, Russell Krupen, ended his tenure with USDA on September 4, 2026. Even before his departure, the new OGC attorneys permanently assigned to the case quickly familiarized themselves with this case and are actively implementing a strategy to ensure the record in this case is on solid footing. In addition to the senior OGC managers overseeing this case:

- There are now four (4) attorneys from OGC permanently assigned to this case. Further, two (2) additional OGC attorneys in the Washington, DC office are currently being onboarded to assist with the review.
- There are three (3) personnel from USDA's eDiscovery Program assisting with this case, including USDA's Director of Information Affairs.
- Defendants have contracted four (4) reviewers from Deloitte to review records for responsive information. Likewise, to speed both the review and production of records in this case, on USDA's behalf, Deloitte is hosting records related to this case on a cloud-based review platform (Relativity).

**B. Newly Expanded Search for Responsive Information.**

Before July 7, 2026, Defendants conducted a search for responsive information using the names of Plaintiffs from the original complaint (ECF No. 1) and associated grant numbers relating to those Plaintiffs.

1. Significantly Expanded Search.

To address Plaintiffs' discovery requests and the Court's production requirements, Defendants expanded the scope of their search for responsive information to include records of numerous custodians covering a broad range of USDA. Specifically, on July 7, 2026, Defendants initiated a search of 22 unique custodians, including numerous persons from USDA's Office of the Secretary, potentially involved in the grant termination decision-making process. The temporal scope of the records search was January 20, 2025, through July 7, 2026. . Further, more than likely, Defendants will need to run supplemental searches covering records of additional custodians.

Due to the nature of USDA activities concerning terminations of grants or contracts during the relevant time-frame, Defendants must conduct a manual review of each document to ensure it is responsive to requests in this case. At the first level of review, documents are being reviewed for responsiveness by OGC attorneys and Deloitte contractors. Upon completion of that review, a second-level privilege review is being conducted by OGC attorneys

From August 27, 2026, and up through September 21, 2026, Defendants have reviewed approximately 26,804 documents at the first level and made a production of 21 documents to Plaintiffs on September 22, 2026. From September 22, 2026, through September 28, 2026, Defendants have reviewed approximately 8,975 documents at the first level. After the review of

documents of the two agreed-upon custodians is complete, Defendants remain willing to speak with Plaintiffs about what custodians should next be addressed.

2. Increasing Land, Capital, and Market Access Program ("ILCMAP") Records.

On May 26, 2026, nearly one year after Plaintiffs filed this lawsuit, Plaintiffs moved for leave to file an amended complaint to add twenty-four additional plaintiffs whose grants under the ILCMAP were terminated in or around March 2026. Mot. to Amend (ECF No. 62). On June 30, 2026, the Court granted the motion and docketed the second amended complaint. Mem. Op. (ECF No. 81).

The Amended Complaint significantly expanded the scope of this case. A substantial number of the remaining Plaintiffs in this case allege their grants were wrongfully terminated under the ILCMAP. Decision-making regarding ILCMAP terminations was conducted pursuant to a distinct decision-making process applicable solely to the ILCMAP program. Consequently, in addition to the broadened search for records discussed above, Defendants have commenced a collection of documents relating solely to the ILCMAP grant termination decision-making process.

## III. The Parties' Responses to the Questions in the Minute Order.

1. Plaintiffs attest that, as of August 14, 2026, defendants' last production was on July 7, 2026, and that not "a single discovery document" has been produced since then. Pls.' Reply, Second Decl. of David S. Muraskin in Supp. of Pls.' Cross-Mot. for Sanctions & Additional Disc. ("2nd Muraskin Decl.") ¶¶ 6-7, ECF No. 109-1.

    a. How many pages or documents have defendants produced in response to plaintiffs' discovery requests since entry of the Scheduling Order on June 12, 2026?

**Plaintiffs' Response:** The maximum number of documents Defendants can claim to have produced is 1,517, plus two responses to Plaintiffs' Second Interrogatory. That presentation fails to accurately portray the productions, however.

Defendants have produced 902 documents with load files so that the documents can be put on a discovery platform. Plaintiffs have raised numerous issues with the first load file, which contained 881 of the 902 documents. Those issues have gone unaddressed. Specifically, in mid-July, Plaintiffs identified more than 100 of those files were missing attachments, so that the production destroyed the parent-child relationship. Defendants have not re-produced those documents. Moreover, without waiving their rights to object to Defendants' privilege claims, also in mid-July, Plaintiffs informed Defendants certain documents in that first load file production might be characterized by Defendants as "inadvertent disclosures" of privileged information. Defendants have never responded to that notice and thus Plaintiffs remain uncertain how to use such documents.

Defendants have also made two productions of documents without load files. In this manner they produced 592 termination letters; 13 templates for the termination letters; 5 completed spreadsheets tracking grants considered for termination and, pursuant to the parties' confidentiality agreement, versions of those spreadsheets redacting purportedly privileged information that Plaintiff could file on a public docket. Defendants also produced in this manner 2 versions of their response to Plaintiffs' Second Interrogatory identifying the grants that were terminated. However, here too, Defendants have failed to correct basic deficiencies. The productions lack Bates numbers and those documents have not been reproduced. Defendants also failed to provide certificates as to the accuracy of their interrogatory responses as required by Federal Rule of Civil Procedure 33(b)(5). Plaintiffs first notified Defendants about these issues on June 23, 2026.

**Defendants' Response:** Defendants have produced 1,517 documents. Regarding issues with productions already made that are raised by Plaintiffs in their response to this question, Defendants have been prioritizing reviewing records for further productions but will immediately begin addressing those concerns.

b. How many pages or documents have defendants produced in response to plaintiffs' discovery requests in the last twelve weeks, since July 7, 2026?

**Plaintiffs' Response:** Defendants produced 21 documents on September 22, 2026. That production exclusively consisted of emails, failing to produce the documents linked in the bodies of the emails. It also appears that other emails in the produced chains need to be produced with their attachments in order for Plaintiffs to fully understand the chains. No other documents have been produced at any point since July 7, 2026.

As far as Plaintiffs are aware, this means Defendants have yet to complete the production of any of the seven distinct categories of documents that Defendants acknowledged on July 24, 2026, that they needed to produce, but would not do so consistent with the Court's scheduling order. Mot. 1-2, ECF No. 99.

**Defendants' Response:** Defendants produced 21 documents on September 22, 2026. Defendants now have in place an established process for reviewing potentially responsive information and expect to produce documents to Plaintiffs on a consistent basis. Should Plaintiffs have any issues with the records produced on September 22, 2026, Defendants invite Plaintiffs to reach out to Defendants so they can be addressed.

2. Despite having been ordered to bring their privilege log into compliance with the Court's [71] Order by July 20, 2026, see Minute Order (July 14, 2026), plaintiffs report that, as of

August 14, 2026, defendants had "not produced a revised privilege log." 2nd Muraskin Decl. ¶ 8.

a. Since August 14, 2026, have defendants produced a revised privilege log?

**Plaintiffs' Response**: No. Further, as Plaintiffs informed the Court, Plaintiffs believed the parties resolved any issues regarding what should be contained in that log no later than August 5, 2026. 2nd Muraskin Decl. ¶ 8, ECF No. 109-1. Plaintiffs have not received any communications from Defendants to suggest otherwise.

**Defendants' Response:** Defendants are in the process of revising the privilege log that was produced on July 7, 2026. Even beyond revision of the July 7, 2026 privilege log, an additional revised privilege log will need to be produced. As stated above, Defendants have expanded the scope of their search for responsive information. Consequently, additional documents will be produced with information withheld pursuant to applicable privileges. Likewise, Defendants are also collecting and reviewing documents relating to the distinct ILCMAP decision-making process. Some information in the ILCMAP-related records will potentially need to be withheld pursuant to applicable privileges.

b. How many documents are listed on the most current privilege log?

**Plaintiffs Response:** Defendants have produced two logs. The deficient log that the Court ordered Defendants to re-produce to bring it into compliance was originally produced on July 7, 2026. It contained 902 entries. Defendants also produced a log on June 18, 2026, which Plaintiffs deemed sufficient and thus did not raise with the Court. That log listed 6 documents.

**Defendants' Response:** The privilege log produced on July 7, 2026 contains 902 entries.

3. Despite requests for a timeline for completion of production of both the Administrative Record and responses to plaintiffs' discovery requests, plaintiffs indicate that, as of August

14, 2026, "Defendants stated they could not" provide a timeline, see 2nd Muraskin Decl. ¶ 4, and defendants' [99] Motion to Vacate the Discovery Scheduling Order, is silent on a timeline.

a. Is defendants' original timeline for completion of discovery by November 5, 2026, see [74] Joint Status Report (June 5, 2026) at 5 (defendants represented that they needed "six months" to gather and produce all relevant documents), still feasible?

**Plaintiffs' Response**: Plaintiffs have no ability to answer this question. Defendants have not provided Plaintiffs any updates on their proposed timeline for their productions.

**Defendants' Response:** No. This representation was made by Defendants before: (1) Defendants greatly expanded the scope of the search for responsive information on July 7, 2026; and (2) the Court docketed the second amended complaint on June 30, 2026, adding twenty-four additional plaintiffs whose grants under the ILCMAP were terminated in or around March 2026. As set forth above, the distinct ILCMAP decision-making process requires a collection of documents relating solely to the ILCMAP decision-making process as well as a supplementation the AR. Defendants further note that yesterday the D.C. Circuit denied their motion to stay the Court's Second Preliminary Injunction. Accordingly, Plaintiffs grants will remain in place while this litigation is ongoing.

b. What is the date certain by which defendants plan to complete production of: (a) the AR; and (b) responses to plaintiffs' discovery requests?

**Plaintiffs' Response**: Plaintiffs have no ability to answer this question. Defendants have not provided Plaintiffs any updates on their proposed timeline for their productions.

**Defendants' Response:** Defendants cannot currently provide the date certain that they can complete production of the AR and responses to Plaintiffs' discovery requests. This is because,

as discussed above, Defendants have greatly expanded search for responsive information and will need to supplement the AR to address the distinct ILCMAP decision-making process.

c. Defendants represented, on August 11, 2026, that they "are making significant commitments of resources to get production back on track," including assigning "three senior managers to oversee the case" and indicating that "another senior manager and six staff attorneys [will] strengthen case management and accelerate productions." Defs.' Opp'n at 4-5. What tangible results, if any, can be reported from this "commitment of resources" as to a date certain for completion of discovery and supplementation, as necessary, of the AR?

**Plaintiffs' Response**: Plaintiffs refer the Court to their earlier answers, which suggest little to no progress has been made. In the months since Defendants fell out of compliance with the Court's deadlines, Defendants have produced a single paltry set of 21 documents and only did that a few days ago. They have not taken basic steps to address long-outstanding issues, including failing to re-produce documents with Bates numbers as had been requested and Defendants agreed to produce, to produce missing attachments Plaintiffs had identified, to address the potential of "inadvertent disclosures" of privileged information, or to produce a compliant privilege log for nearly all of the documents over which they claim privilege. Perhaps even more shockingly, months after proposing a new schedule, and without raising the need for additional time with the Court, Defendants now cannot even feint at what that schedule they can meet to satisfy their production obligations. Thus, it is hard to take seriously Defendants' claim they have adequate staffing and a known process—particularly given that this has been their repeated refrain throughout this case and it has led us to this point. Defendants' reference to the ILCMAP program

as requiring additional leeway is peculiar as that program was part of the case when it was originally filed, it is not new as Defendants claim.

**Defendants' Response:** Despite the September 4, 2026, departure of the OGC attorney previously leading this case, the commitment of resources to date has now enabled the creation and execution of procedures providing for the consistent processing of records to Plaintiffs at an increased pace.

Likewise, of the remaining Plaintiffs in this case, a substantial number allege their grants were wrongfully terminated under the ILCMAP. The commitment of resources has ensured that the collection documents relating solely to the ILCMAP decision-making process is already underway. Once that collection is complete, Defendants will apply committed resources to reviewing those documents and timely producing a supplemental AR.

Finally, and towards its sincere desire to get this case back on track with its newly committed resources, Defendants will immediately work to address the outstanding issues Plaintiffs enumerate in their response to this question.

Dated this 30th day of September, 2026.

Respectfully submitted,

Respectfully submitted,

/s/ Hannah Wolf
Hannah Wolf
TX Bar No. 24137413 (pro hac vice)
David S. Muraskin
DC Bar No. 1012451
FarmSTAND
712 H Street NE, Suite 2534
Washington, DC 20002
(202) 595-8816
david@farmstand.org
hannah@farmstand.org

Carrie Apfel (DC Bar No. 974342)
Earthjustice
1001 G Street, NW, Suite 1000

JEANINE FERRIS PIRRO
United States Attorney

*/s/ John J. Bardo*
John J. Bardo, DC Bar #1655534
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2539

*Counsel for Defendants*

Washington, DC 20001
(202) 667-4500
capfel@earthjustice.org

Scott W. Carlson
MN Bar No. 0338400 (pro hac vice)
Benjamin E. Apple
NC Bar No. 52009 (pro hac vice)
Farmers Justice Center
6 Fifth Street West
Suite 650
St. Paul, MN 55102
(651) 204-1664
scott.carlson@farmersjustice.org
ben.apple@farmersjustice.org

*Counsel for Plaintiffs*

Ben Grillot
D.C. Bar. No. 982114
Kimberley Hunger
N.C. Bar No. 41333 (pro hac vice)
SOUTHERN ENVIRONMENTAL LAW CENTER
500 New Jersey Ave. NW, Suite 600
Washington, DC, 20001
Telephone: (202) 828-8382
bgrillot@selc.org
kmeyer@selc.org

*Counsel for Plaintiffs Agrarian Trust and RAFI-USA*